2010 WY 64

**Richard James GARZA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–08–0279.

Supreme Court of Wyoming.

May 19, 2010.

Representing Appellant: Diane Lozano, Wyoming State Public Defender; Tina Kerin, Appellate Counsel; Kirk A. Morgan, Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Richard James Garza appeals from the Judgment and Sentence convicting him of two counts of second degree sexual assault and imposing a combined prison sentence of twenty-one to twenty-seven years. Garza contends the district court erred at trial in admitting certain evidence and in instructing the jury, relied on improper factors in sentencing him, and erred in denying his motion for a new trial. We affirm.

## ISSUES

[¶ 2] Garza offers these issues for our consideration:

I. Did the [district] court abuse its discretion when it allowed into evidence telephone recordings when said recordings were not proper impeachment material, and were not otherwise relevant?

II. Did the district court abuse its discretion when it denied Appellant's motion for a new trial based on unsupported assumptions not in the record?

III. Did the district court err when it used factors which were neither found by the jury, nor allowed to be addressed by Appellant against him at his sentencing?

IV. Did the district court's instruction to the jury that corroboration of a victim's testimony is not necessary to obtain a conviction for sexual assault, confuse or mislead the jury or place improper emphasis on the victim's testimony?

## FACTS

[¶ 3] The underlying facts of Garza's crimes are not of any special significance to the issues raised in this appeal, and we will not recite them in detail. It suffices to note that, on June 19, 2007, MG notified the Cheyenne Police Department that her nine-year-old daughter, JM, had been sexually assaulted by Garza. Subsequent interviews of JM indicated Garza had sexually abused her over a period of years—starting when she was about four or five years old—and that the abuse included vaginal and anal penetration, as well as oral sex. A sexual assault examination conducted on June 19 revealed a notch, or healed tear, on JM's hymen and a tender, red area inside the labia.

[¶ 4] The State ultimately charged Garza with four counts of second degree sexual assault under Wyo. Stat. Ann. § 6–2–303(a)(v) (Lexis 2005), and one count of third degree sexual assault under Wyo. Stat. Ann. § 6–2–304(a)(ii) (LexisNexis 2005).[1] In May 2008, a jury found Garza guilty on two counts of second degree sexual assault and acquitted him on the remaining charges. Garza filed a motion for new trial in September 2008 on the ground that JM had recanted her allegations of sexual abuse. After a hearing, the district court denied the motion. The district court later sentenced Garza to consecutive terms of imprisonment of eleven to fifteen years on one count and ten to twelve years on the other count. Additional facts will be set forth as necessary in our discussion of Garza's appellate issues.

## DISCUSSION

### Admission of Tape Recordings

[¶ 5] At trial, Garza's girlfriend, KV, was called by the State in its case-in-chief to testify regarding her recollection of the events on June 17, 2007, the last day JM alleged Garza had assaulted her. Immediately before KV testified, the prosecutor, defense counsel, and the district court discussed the use of certain tape recorded conversations between Garza and KV which occurred while Garza was incarcerated in the Laramie County Detention Center awaiting trial in this case. The prosecutor indicated she would use the recordings for impeachment, pursuant to W.R.E. 613 and 801(d), only if KV denied making certain statements.

[¶ 6] During KV's testimony, the prosecutor attempted to use the recordings, and defense counsel objected. Defense counsel

---

1. At the time of the offenses, the statutes provided:

§ 6–2–303. Sexual assault in the second degree.

(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

* * * *

(v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim[.]

§ 6–2–304. Sexual assault in the third degree.

(a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:

* * * *

(ii) The actor is an adult and subjects a victim under the age of fourteen (14) years to sexual contact without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim[.]

The statutes were repealed on July 1, 2007, by 2007 Wyo. Sess. Laws ch. 159, § 3. Similar provisions are now contained in § 6–2–314 (LexisNexis 2009) and § 6–2–315 (LexisNexis 2009), respectively.

argued that the prosecutor was impermissibly using the recordings in an attempt to introduce statements made by Garza to KV as substantive evidence in the State's case rather than for the stated purpose of impeaching KV with her prior statements. Defense counsel further maintained that Garza's statements to KV were inadmissible hearsay and irrelevant to the issues at trial. The district court ultimately determined that the tape recordings, which indicated an attempt by Garza to influence the testimony of prospective witnesses, were admissible under W.R.E. 801(d)(2)(A) as admissions of a party opponent.[2] The district court specifically found Garza's statements to be relevant because they tended to show "indicia of guilt." The district court also found that the recordings were relevant and admissible insofar as they could impeach KV's testimony.

[¶ 7] Garza asserts reversible error in the admission of the tape recordings. He essentially argues, in a nonsensical and confusing manner, that the recordings were improper impeachment material and otherwise irrelevant, inadmissible evidence. In reviewing the propriety of the district court's evidentiary ruling, we are guided by the following principles:

> Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will

not disturb the trial court's determination. The burden is on the defendant to establish such an abuse.

*Brown v. State*, 2005 WY 37, ¶ 12, 109 P.3d 52, 56 (Wyo.2005) (quotation marks and internal citations omitted); *see also Farmer v. State*, 2005 WY 162, ¶ 8, 124 P.3d 699, 703 (Wyo.2005); *Holloman v. State*, 2005 WY 25, ¶ 10, 106 P.3d 879, 883 (Wyo.2005).

[¶ 8] We need not address the impeachment value of the tape recordings because we agree with the district court's ruling that they were admissible as statements by a party opponent under W.R.E. 801(d)(2)(A). We also agree with the district court that the recordings were relevant because they showed indicia of guilt. *See Mazurek v. State*, 10 P.3d 531, 543 (Wyo.2000); 2 *McCormick on Evidence* § 265 (6th ed.2006). "We have followed the principle that evidence of an attempt to fabricate evidence is particularly harmful to a defendant since it is an incriminating circumstance inconsistent with innocence and tends to show consciousness of guilt." *Miller v. State*, 830 P.2d 419, 427 (Wyo.1992). Accordingly, we find no abuse of discretion in the district court's admission of the challenged evidence.

### Motion for New Trial

[¶ 9] Approximately four months after his trial, Garza filed a motion for a new trial based on newly discovered evidence. The motion was premised on a letter purportedly written by JM in which she recanted her allegations of sexual abuse. The letter stated in relevant part:[3]

> to whom it may concern:
>
> IN RE: of Richard Garza
>
> Please let my Dad get out Really Bad I miss him Dearly and plus I know he wants to get to smell the Roses and so he can see his KIDS and also I want to say I'M SORRY he Did Not Rape Me.

Garza indicated in his motion that "JM is willing to testify to this letter at [a] hearing," and requested that the matter be set for

---

2. W.R.E. 801(d)(2)(A), "Admission by Party–Opponent," provides that a statement is not hearsay if the statement is offered against a party and is his own statement.

3. We have chosen to recite the letter as written without making any grammatical, punctuation, or other corrections.

hearing. As requested, the district court held a hearing on Garza's motion on September 15, 2008. At that hearing, Garza relied exclusively on the recantation letter and did not present any testimony or other evidence in support of his motion. The district court denied Garza's motion for new trial, stating:

I have reviewed the motion. I have reviewed with great care the letter that is presumably signed by the victim. I have reviewed the case of *Brown v. State*, [816 P.2d 818 (Wyo.1991),] and in that [case the] supreme court says "Recanted testimony is viewed with the upmost [sic] suspicion."

In reviewing the letter the format of it by itself arouses suspicion in my mind. It starts out "To Whom It May Concern," colon. I know of no ten-year-old little girl who would write a letter addressed "To Whom It May Concern."

It goes on to say "In regard Richard Garza," colon. I know of no ten-year-old children who would wite [sic] a letter in that format.

I have great recollection of the victim sitting in this witness stand over here and testifying to what in my mind was absolute clarity of the details of these allegations and of these charges.

I also have recollection of, and I reviewed my trial notes in preparing for this hearing, the testimony of [JM's cousin], MG, and [KV]; [KV] being a defense witness essentially, and her testimony was incredible. It was clear to me that Mr. Garza and [KV] conspired to arrange for inaccurate information to be presented to the jury in court.

* * * *

I have also reviewed my notes regarding the testimony of the SANE [4] nurse. I recall the photographs which demonstrated to my satisfaction and apparently to the jury's satisfaction that there was recent sexual contact. Certainly the SANE nurse did not know who was responsible for that contact.

The testimony of [JM's cousin], the testimony of the SANE nurse corroborated in

my mind the testimony of the victim, that coupled with my instinctive doubt of the veracity of the information contained in this handwritten letter leads me to believe that it is not appropriate to grant a motion for a new trial.

[¶ 10] On appeal, Garza takes issue with the district court's denial of his motion for a new trial. Garza's contention of error questions a discretionary decision of the district court. *Morganflash v. State*, 2003 WY 120, ¶ 11, 76 P.3d 830, 835 (Wyo.2003); *Griswold v. State*, 2001 WY 14, ¶ 7, 17 P.3d 728, 731 (Wyo.2001) (the decision to grant or deny a motion for new trial is within the sound discretion of the trial court). We will not disturb the district court's decision absent a finding of an abuse of discretion. *Id.* In determining whether an abuse of discretion occurred, our focus is on the reasonableness of the district court's choice in light of the facts and circumstances. *Id.; Baumgartner v. State*, 7 P.3d 912, 915 (Wyo.2000).

[¶ 11] We have said that a motion for a new trial based on newly discovered evidence is not favored and should be viewed with caution. *Griswold*, ¶ 8, 17 P.3d at 731. With respect to a new trial motion based on recanted testimony, we have also said:

We see no reason for deviating from the basic rule for evaluating district court decisions on motions for new trial. *Opie v. State*, 422 P.2d [84] at 85 [ (Wyo.1967) ]. However, we will enlarge on that general rule somewhat to provide additional guidance in cases, such as this, which involve recanted testimony. To that purpose, we agree with the Supreme Court of Montana that granting a person of questionable credibility and motive carte blanche to overturn the determination of a jury operating within the bounds of our constitutional protections is not conducive to the sound administration of justice. *State v. Perry*, 232 Mont. 455, 758 P.2d 268, 275 (1988). Therefore, we adopt the following rule espoused by that court, as well as several others:

In light of the inherent suspicion surrounding recanted testimony and the public interest in swift and sure justice,

---

4. "SANE" is an acronym for "sexual assault nurse examiner."

we believe the better reasoned approach to be that adopted by the Supreme Court of Kansas:

"When a new trial is sought on the basis of recanting testimony of a prosecution witness, the weight to be given such testimony is for the trial judge passing on the motion for a new trial to determine. The trial judge is required to grant a new trial only when he [or she] is satisfied the recantation of the witness is true." ... *Id.* 758 P.2d at 275; (quoting *State v. Norman,* 232 Kan. 102, 652 P.2d 683, 689 (1982)). *See also Thacker v. Commonwealth,* 453 S.W.2d 566, 568 (Ky.1970).

*Brown v. State,* 816 P.2d 818, 822 (Wyo. 1991). Recanted testimony

should be viewed with the utmost suspicion, *Sims v. State,* Wyo.1972, 495 P.2d 256, and when a motion for a new trial, based upon recantation, is denied by the trial court, this court will ordinarily be bound by that decision. *Espy v. State,* 1939, 54 Wyo. 291, 92 P.2d 549, 559. In *Flaim v. State,* Wyo.1971, 488 P.2d 153, this court quoted the following language which is most appropriate to this case: " 'There is no form of proof so unreliable as recanting testimony. * * * Those experienced in the administration of the criminal law know well its untrustworthy character.' " 488 P.2d at 155.

*Jones v. State,* 568 P.2d 837, 854 (Wyo. 1977).

*Davis v. State,* 2005 WY 93, ¶ 45, 117 P.3d 454, 471 (Wyo.2005).

[¶ 12] Considering the applicable standard of review in light of the record before us, we cannot conclude an abuse of discretion occurred in this instance. The district court judge had been involved with this case from its inception. He presided over the trial and was well acquainted with the evidence presented, including the detailed testimony of the victim. Based on his familiarity with the case, the district court judge was in the best position to determine the credibility of the recanting evidence. From our vantage point, and given the very specific reasons as to why he found the letter not to be credible, we are convinced the district court judge exercised

sound discretion in denying Garza's motion for a new trial.

[¶ 13] Garza, however, maintains the district court should have held an evidentiary hearing regarding the authentic nature of the newly discovered evidence before ruling on his motion instead of summarily disposing of the credibility of the letter. We reject Garza's argument for two reasons. First, it is devoid of any pertinent legal support. Second, we find it to be nothing more than an attempt by Garza to shift the blame to the district court for his failure to establish an entitlement to a new trial. As already noted, the district court afforded Garza an evidentiary hearing and an opportunity to establish the validity of the victim's alleged recantation. For whatever reasons, Garza chose to simply rely on the recantation letter and did not present any evidence corroborating or attesting to its truthfulness. In light of these facts, we decline to provide Garza any relief.

### Sentencing

[¶ 14] Sentencing decisions are within the broad discretion of the sentencing court. *DeLoge v. State,* 2002 WY 155, ¶ 9, 55 P.3d 1233, 1237 (Wyo.2002). We will not disturb a sentence because of sentencing procedures "absent a showing by the defendant of an abuse of discretion, procedural conduct prejudicial to him, and circumstances that manifest inherent unfairness and injustice, or conduct that offends the public sense of fair play." *Id.,* ¶ 9, 55 P.3d at 1237–38. An error warrants reversal only if it is prejudicial and affects an appellant's substantial rights. *Roeschlein v. State,* 2007 WY 156, ¶ 17, 168 P.3d 468, 473 (Wyo.2007). The burden of establishing that the error was prejudicial rests with the appellant. *Id.*

[¶ 15] Garza maintains the district court abused its discretion and violated his due process rights when it sentenced him. According to Garza, the district court impermissibly imposed harsher sentences based on its belief that he was responsible, through coercion or other means, for the victim's recantation letter, a fact which was not found by the jury as required by *Apprendi v. New*

*Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and which he did not have an opportunity to admit or deny. At the center of Garza's complaint are the following comments of the district court:

> What makes this case worse, I think, than the cases that [the prosecutor] talked about is you convinced other people that you didn't do this. You may have convinced yourself that you didn't do this or more tragically you may have convinced the victim that you didn't do this. That in my mind amounts to a third rape of that person.
>
> I don't know you well enough to know what your psychiatric or psychological conditions are, but when you set out to convince other people that you didn't do these things, you raped her all over again. You raped her again when you got her, or you had somebody you align with, got her to sign that letter. You raped her again.

[¶ 16] Although we are concerned with the tenor of these statements, there is no indication the district court's sentiments influenced its sentencing decision. Viewing the district court's remarks at sentencing as a whole, and in proper context, it is apparent the district court's sentencing decision was based on its consideration of Garza's criminal conduct, the facts and circumstances surrounding the criminal offenses, and the information that had been brought to its attention during the criminal proceedings, including the victim's testimony and the other evidence adduced at trial. While Garza may not like his sentences, there is simply no basis from which to conclude the district court's suspicions concerning the recantation letter resulted in a harsher sentence than would have otherwise been imposed.

[¶ 17] Further, we find no merit in Garza's contention that the tenets of *Apprendi* and *Blakely* were transgressed in this instance. Those cases involved the determination of facts that resulted in an enhancement of a criminal penalty beyond the prescribed statutory maximum. Here, each act of second degree sexual assault for which Garza was convicted and sentenced carried a minimum sentence of five years and a maximum sentence of life imprisonment. Wyo. Stat. Ann. § 6–2–306(c)(i) (LexisNexis 2005). The eleven-to-fifteen-year and ten-to-twelve-year prison sentences imposed by the district court were well within the prescribed statutory range. *Apprendi* and *Blakely* simply do not apply to the circumstances of this case.

[¶ 18] In sum, Garza has not demonstrated that prejudicial error occurred at sentencing or that the district court abused its discretion in sentencing him. We therefore affirm the sentences imposed by the district court.

### Jury Instruction

[¶ 19] Garza asserts the district court erred in instructing the jury. When reviewing claims involving jury instructions, we apply the following the standard:

> A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issues, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. Prejudice will be determined to exist only where an appellant demonstrates that the instruction given confused or misled the jury with respect to the proper principles of law.

*Luedtke v. State,* 2005 WY 98, ¶ 28, 117 P.3d 1227, 1232 (Wyo.2005) (internal citations omitted).

[¶ 20] Garza specifically condemns the district court's decision to give, over his objection, Instruction No. 17, which states: "Corroboration of a victim's testimony is not necessary to obtain a conviction for sexual assault." Garza concedes the instruction constitutes a correct statement of law, as it mirrors the language of Wyo. Stat. Ann. § 6–2–311 (LexisNexis 2009). His complaint is that the instruction placed improper emphasis on the victim's testimony and served only to confuse and mislead the jury as to its responsibility in assessing the evidence and his guilt or innocence on the charged offenses.

[¶ 21] We agree with Garza that the giving of this instruction was improper. In *Story v. State,* 721 P.2d 1020, 1044–46 (1986), we disapproved of a similar instruction, reasoning that an instruction highlighting or denigrating a victim's testimony has the potential to mislead the jury. We advised trial courts that such an instruction should not be given.

 [¶ 22] However, we find that the giving of the instruction amounted to harmless error under the circumstances in this case. First, the record reveals that the testimony of the victim was corroborated by other evidence. Although JM was the only witness to testify about the actual incidents of assault, her testimony was corroborated to an extent by the testimony of the SANE nurse who performed the sexual assault examination. The SANE nurse testified that she observed, among other things, a notch, or healed tear, on JM's hymen and a "very tender red area that was on the inside part of the labia," which she opined was caused by "blunt force trauma." In addition, JM's cousin testified about his conversations with JM and JM's demeanor shortly after the last alleged assault. Since there was some corroboration of the victim's testimony, the challenged instruction, in essence, pertained to a moot point.

[¶ 23] Further, the district court expressly instructed the jury that it must reach a verdict on the charged crimes beyond a reasonable doubt after examining all the evidence produced at trial. The district court also instructed the jurors: (1) they were the sole judges of the credibility of the witnesses and of what weight is to be given to the witnesses' testimony; (2) they should consider the testimony of any witness in light of all the evidence and any other factors bearing on believability and weight; and (3) they were to consider the instructions as a whole and should not place undue emphasis on any particular instruction or part thereof. Viewing the district court's instructions as a whole, and presuming as we must that the jury followed the instructions, *see Conine v. State,* 2008 WY 146, ¶ 19, 197 P.3d 156, 163 (Wyo.2008), we do not believe the jury was confused or misled by Instruction 17 as to its duty with respect to the trial evidence and its assessment of Garza's criminal culpability. This is readily apparent by the fact the jury acquitted Garza on three of the five charged crimes.

**CONCLUSION**

[¶ 24] Garza has not convinced this Court that reversible error occurred with respect to any of the issues raised in this appeal. We therefore affirm in all respects the Judgment and Sentence of the district court.