# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 30

OCTOBER TERM, A.D. 2014

February 26, 2015

ADEBOWALE OLUSEYI ADEKALE
a/k/a TED ADEKALE,

Appellant
(Defendant),

v.

S-14-0035

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; and Hollis Ann Ploen, Student Intern. Argument by Ms. Ploen.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    A jury found Adebowale Oluyseyi Adekale guilty of fifteen counts of felony Medicaid fraud and one count of misdemeanor Medicaid fraud under Wyo. Stat. Ann. § 42-4-111(a) and (b)(i).  The district court sentenced Mr. Adekale to sixteen concurrent terms of four to ten years but suspended that sentence in favor of eight years of supervised probation.  Mr. Adekale's timely appeal followed.  Mr. Adekale contends that the State failed to present evidence that he provided "medical assistance" as defined in Wyo. Stat. Ann. § 42-4-102(a)(ii) and that the district court erred in its instruction to the jury.  Mr. Adekale also appeals his sentence, which included a felony sentence for a misdemeanor conviction.  We affirm in part and remand in part.

## ISSUES[1]

[¶2]    Mr. Adekale raises essentially four issues on appeal:

> I.        Whether the district court abused its discretion when it denied Mr. Adekale's motion for judgment of acquittal because the State produced no evidence that Mr. Adekale provided "medical assistance" as required by W.S. § 42-4-111(a).

> II.        Whether the district court abused its discretion when it denied Mr. Adekale's motion for judgment of acquittal because the State failed to prove the instructional element concerning the dates of the alleged fraud.

> III.        Whether the district court erred in its instructions to the jury when it included the term "habilitation," and omitted the definitions of "medical assistance" and "knowingly."

> IV.        Whether the district court erred in regard to one of the counts when it imposed a felony sentence for a misdemeanor conviction of Medicaid fraud.

---

[1]  Mr. Adekale identified only three issues on appeal because the denial of his motion for judgment of acquittal included a determination of the statutory definition of "medical assistance" as well as a rejection of his argument that the State must prove the specific dates on which he committed fraud.  We see these issues as sufficiently distinct to warrant separate analysis.

1

Each issue requires examination under different standards of review. For this reason, we address each issue independently herein.

## FACTS

[¶3] The Medicaid waiver program involved in this case provides residential habilitation and day habilitation services for developmentally disabled patients. Residential habilitation provides basic services to recipients able to live in their own home. Day habilitation provides patients the necessary physical and occupational tools to interact with society. Each recipient of these services has a plan which sets out the necessary services as well as a necessary caregiver to patient ratio. Mr. Adekale was a certified waiver services provider for both day and residential habilitation. Mr. Adekale offered these services through his business, Developmental Resources Center. The Medicaid fraud charges in this case deal with both categories of services.

[¶4] A complaint concerning billing discrepancies prompted an investigation of Mr. Adekale, and an investigator identified a pattern of fraud in Mr. Adekale's billing practices. Following the investigation, the State filed a sixteen-count information against Mr. Adekale for violating Wyo. Stat. Ann. § 42-4-111(a) and (b)(i) and (ii) (LexisNexis 2013).

[¶5] In pretrial motions, Mr. Adekale requested that the jury instructions include the definition of "medical assistance" found in Wyo. Stat. Ann. § 42-4-102(a)(ii) (LexisNexis 2013):

> "Medical assistance" means partial or full payment of the reasonable charges assessed by any authorized provider of the services and supplies enumerated under W.S. 42-4-103 and consistent with limitations and reimbursement methodologies established by the department, which are provided on behalf of a qualified recipient, excluding those services and supplies provided by any relative of the recipient, unless the relative is a family caregiver providing services through a corporation or a limited liability company, which corporation or limited liability company the relative may own, under a home and community based waiver program, or for cosmetic purposes only[.]

The district court denied the request as premature and informed the parties that final instructions would be decided at trial. On the day trial began, the district court reviewed jury instructions with both parties. The State and Mr. Adekale stipulated to the general instruction that "[t]he information in this case charges . . . Adekale with unlawfully making false statements in providing habilitation services to Medicaid clients."

2

[¶6]    At trial, the State presented evidence that Mr. Adekale developed a pattern of billing the Medicaid program for services he did not perform.  Service logs indicated that Mr. Adekale provided care for certain patients, though those patients were out of town or otherwise unavailable during the dates of the alleged care.  The State also presented evidence of numerous incidents where some amount of care was provided, but that Mr. Adekale billed for services in excess of those actually provided.

[¶7]    Following the conclusion of the State's case in chief, Mr. Adekale moved for judgment of acquittal arguing that the State failed to prove the precise dates on which he committed fraud or that he provided medical assistance as defined in § 42-4-102.  Mr. Adekale's proposed understanding of that term requires that the State prove **he made payment** for the services received by **his** patients.  The district court denied the motion for judgment of acquittal.  The court held that charges covering a range of dates afforded due process in this case and that the alleged grammatical deficiency in the statutory definition of "medical assistance" would not cause the fraud charges to fail.

[¶8]    The defense rested without presenting evidence and the court excused the jury to allow the parties to conference and determine final jury instructions.  In conference, Mr. Adekale objected to the inclusion of the terms "habilitation" or "habilitation services" in the instruction describing the type of services provided.[2]  Mr. Adekale then requested that instruction specifically define the terms "medical assistance" and "knowingly."  The district court again emphasized that defining the term "medical assistance" would unnecessarily confuse the jury.  Further, the district court recognized fraud as a general intent crime and therefore determined that including a definition of "knowingly" was unnecessary.  The district court issued its instructions to the jury and the jury returned a guilty verdict on all sixteen counts.

[¶9]    The district court sentenced Mr. Adekale to a minimum of four years to a maximum of ten years of confinement for each count, ordering each count to run concurrently.  The district court suspended Mr. Adekale's confinement sentence in favor of eight years of supervised probation in addition to restitution.  Mr. Adekale timely filed his appeal.

## DISCUSSION

[¶10] A comprehensive examination of the Wyoming Medical Assistance and Services Act indicates that while the statute under which the State charged Mr. Adekale is

---

[2]   The State's proposed instruction read: "providing habilitation services for the Medicaid waiver program."   Mr. Adekale's proposed instruction read: "the defendant foreknowingly made a false statement or representation in providing medical assistance."  The final instruction read: "The Defendant . . . knowingly made a false statement or misrepresentation in providing Medicaid medical assistance in the form of habilitation services . . ."

ambiguous, the legislature's intent to criminalize the conduct involved in this case is clear. Accepted principles of statutory interpretation require this Court to implement that intent if possible. The district court did not abuse its discretion when it denied Mr. Adekale's motion for judgment of acquittal and the instructions proffered to the jury adequately advised them of the basis for his conviction. For these reasons we affirm Mr. Adekale's conviction as well as the district court's denial of his motion for judgment of acquittal. The district court, however, incorrectly sentenced Mr. Adekale for sixteen felony counts rather than for the fifteen felony counts and one misdemeanor count for which he was convicted. We remand the improper sentence for correction by the district court.

*Issue I*

[¶11] Mr. Adekale first contends that the district court abused its discretion when it denied his motion for judgment of acquittal because the State produced no evidence that Mr. Adekale provided "medical assistance" as that term is defined in § 42-4-102(a)(ii). Resolving this issue requires applying this Court's tools of statutory construction.

[¶12] Statutory interpretation is a question of law which we review *de novo*. *Crain v. State*, 2009 WY 128, ¶ 8, 218 P.3d 934, 938 (Wyo. 2009). The plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. *Id.* Where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not look for and impose another meaning. *Id.* Where legislative intent is discernible a court should give effect to the "most likely, most reasonable, interpretation of the statute, given its design and purpose." *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002).

[¶13] We have said that we will not add language or choose other words to change the meaning of a statute. *Stutzman v. Office of Wyoming State Eng'r*, 2006 WY 30, ¶¶ 14-16, 130 P.3d 470, 475 (Wyo. 2006). On the other hand, "it is one of the surest indexes of a mature and developed jurisprudence . . . to remember that the statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945), *judgment aff'd,* 326 U.S. 404, 66 S.Ct 193, 90 L.Ed. 165 (1945); 2A Norman J. Singer and J.D. Shambie Singer, *Sutherland on Statutory Construction* § 45:9 (7th ed. 2014). This Court will not interpret a statute in a way which renders any portion of it meaningless or in a manner producing absurd results. *Stutzman*, ¶ 16, 130 P.3d at 475.

[¶14] For these reasons, the majority of courts have transposed words and phrases when necessary to effect a manifest legislative intent and to give a statute meaning and avoid absurdity. *See* 2A *Sutherland on Statutory Construction*, *supra*, § 47:35. Courts have also permitted the substitution of one word for another if necessary to carry out legislative intent. *Id*. at § 47:36. Although they do so with care and only when necessary

to effect legislative intent, courts even go so far as to insert or add words to do so. *Id*. at § 47:38.

[¶15] This case also demands consideration of the long-standing rule that statutes be read in *pari materia*. *Crain*, ¶ 8, 218 P.3d 938. This requires a construction which reconciles inconsistencies in one portion of a statute with another statute dealing with the same subject. *Id*. The resolution of this case requires that we approach these tools of statutory interpretation cautiously, but we are convinced their prudent use is warranted here.

[¶16] The Wyoming Medical Assistance and Services Act, Wyo. Stat. Ann. § 42-4-101, *et seq.,* governs Wyoming's administration of the combined state and federal health program commonly known as Medicaid. This Court gave a concise overview of the Medicaid program in *Estate of Marusich v. State ex rel. Dep't of Health*, 2013 WY 150, ¶ 9, 313 P.3d 1272, 1276-77 (Wyo. 2013). The Medicaid program provides medical benefits to qualified recipients as a payer of last resort. *Id.* This appeal turns on the legislature's definition of the exchange by which Medicaid benefits flow from the State as "payer of last resort" to those receiving medical services. A thorough reading of the Wyoming Medical Assistance and Services Act shows that "medical assistance" is a term used throughout the Act to describe this exchange. *See*, e.g., Wyo. Stat. Ann. § 42-4-103(a) (LexisNexis 2013) (Services and supplies authorized for medical assistance); Wyo. Stat. Ann. § 42-4-104(c)(ii) (LexisNexis 2013) (medical assistance computed on the per diem basis rate); Wyo. Stat. Ann. § 42-4-201(a) (LexisNexis 2013) (the recipient shall not be deprived of any medical assistance for which he is entitled under this chapter).

[¶17] Into this benefit program enters a provider of services, such as Mr. Adekale, who renders medical services and would ordinarily bill his patient for those services. In the waiver program, however, Mr. Adekale provides services to Medicaid beneficiaries and accounts to the Wyoming office administering Medicaid for payment of those services.

[¶18] The heart of this issue lies with the language of Wyo. Stat. Ann. § 42-4-111(a) (LexisNexis 2013), the charging statute, which provides that:

> No person shall knowingly make a false statement or misrepresentation or knowingly fail to disclose a material fact in providing medical assistance under this chapter.

The statute is ambiguous when read together with Wyo. Stat. Ann. § 42-4-102(a)(ii) (LexisNexis 2013), which defines "medical assistance" as:

> "Medical assistance" means **partial or full payment of the reasonable charges assessed by any authorized provider** of

5

the services and supplies enumerated under W.S. 42-4-103 and consistent with limitations and reimbursement methodologies established by the department, which are provided on behalf of a qualified recipient, excluding those services and supplies provided by any relative of the recipient, unless the relative is a family caregiver providing services through a corporation or a limited liability company, which corporation or limited liability company the relative may own, under a home and community based waiver program, or for cosmetic purposes only[.] [Emphasis added.]

[¶19] The language of § 42-4-111 is ambiguous because strict construction of the statute would render it meaningless. By using the word "providing," the legislature clearly intended to criminalize false representations by those seeking compensation for providing services or supplies (*i.e.*, care) to Medicaid recipients when those misrepresentations resulted in payment. This conclusion is reinforced by § 42-4-111(b), which provides for a penalty of up to ten years in prison if "the value of medical assistance" is five hundred dollars or more, but for a misdemeanor if it is less. In other words, the punishment is related to the amount of payment received.

[¶20] A completely literal reading of § 42-4-111(a) in conjunction with § 42-4-102(a)(ii) could cause one to accept the absurd notion that the legislature intended to criminalize payment of money by those who provide services to Medicaid recipients. However, providers do not pay; rather, they receive payment for the services they render. The statute would be meaningless if read in that fashion, as it would apply to no one.

[¶21] When § 42-4-111(a) is read in *pari materia* with the other Medicaid provisions, it is clear that the legislature intended to provide that "[n]o person [providing services] shall knowingly make a false statement or misrepresentation or knowingly fail to disclose a material fact in applying for medical assistance (payment) under this chapter."

[¶22] One may argue that § 42-4-111(c) by its terms is the statute applicable to the conduct Mr. Adekale was charged with. That statute provides:

No person shall knowingly make a false statement or misrepresentation or knowingly fail to disclose a material fact in obtaining medical assistance under this chapter. A person violating this subsection is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both.

Wyo. Stat. Ann. § 42-4-111(c) (LexisNexis 2013).

6

[¶23] The argument would go that Mr. Adekale literally obtained medical assistance by the above definitions and could only be convicted of a misdemeanor regardless of how much money he was paid. This interpretation is incorrect. This statute applies to those whom have received care from a provider. This unremarkable conclusion is supported by two simple reasons. First, as heretofore explained, § 42-4-111(a) would still be rendered meaningless and applicable to no one. Secondly, the penalty section, which is related to the amount of payment made, would also be meaningless and contrary to the statutory scheme. We can only conclude that the legislature intended to say that "no person applying for Medicaid benefits shall knowingly make a false statement or misrepresentation or knowingly fail to disclose a material fact in obtaining medical care from a provider." The legislature intended to punish those applying for Medicaid benefits less harshly for false misrepresentations than it did those in the business of providing services to many Medicaid benefit recipients.

[¶24] This is not to suggest that the legislature should not consider simplifying the crime in question by eliminating the technical jargon it contains. It did so in the Wyoming Medicaid False Claims Act of 2013, where it granted the State the right to recover treble damages if a claimant "knowingly presents or causes to be presented a false or fraudulent claim for payment or approval." Wyo. Stat. Ann. § 42-4-303(a)(i) (LexisNexis 2013). Iowa uses the term "medical assistance," but also defines the term "provider," and more clearly defines the elements of the crime as follows:

> A person who knowingly makes or causes to be made false statements or misrepresentations of material facts or knowingly fails to disclose material facts in application for payment of services or merchandise rendered or purportedly rendered by a provider participating in the medical assistance program under this chapter commits a fraudulent practice.

I.C.A. § 249A.2(12) (definition of provider); § 249A.51 (West 2013). The federal health care fraud statute is also quite simple:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
>   (1) to defraud any health care benefit program; or
>   (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

7

18 U.S.C.A. § 1347 (2000).

***The Rule of Lenity***

[¶25] No discussion of this issue would be complete without addressing the rule of lenity or strict construction of criminal statutes. That rule provides that an ambiguity in a criminal statute should be resolved in favor of lenity. *See, e.g., Amrein v. State*, 836 P.2d 862, 864-65 (Wyo. 1992). Another formulation of the rule is that penal statutes are to be strictly construed against the government. 3 Norman J. Singer and J.D. Shambie Singer *Sutherland on Statutory Construction*, § 59:3 (7th ed. 2008). Still another formulation is that when a court is faced with two reasonable interpretations of a criminal statute and legislative intent is ambiguous, the court should adopt the less punitive alternative. *Id*. at § 59:4.

[¶26] The rule has its limitations, however. As observed in 3 *Sutherland on Statutory Construction*, *supra*, at § 59:6:

> The rule of strict construction is not the only factor which influences the interpretation of penal laws. Instead, the rule is merely one among various aids which may be useful to determine the meaning of penal laws. This has been recognized time and again by the decisions, which frequently enunciate the principle that the intent of the legislature, or the meaning of the statute, must govern, and that strict construction should not be permitted to defeat the policy and purposes of the statute. One court has noted that "While criminal statutes must be strictly construed to avoid the creation of penalties by construction, such reasonable view must be taken of a statute as will effectuate the manifest intent and purpose of the lawmakers." A federal district court has said, "The strict construction of a criminal statute does not mean such construction of it as to deprive it of the meaning intended. Penal statutes must be construed in the sense which best harmonizes with their intent and purpose."

If legislative intent is sufficiently clear, strict construction cannot defeat that intent, even in the case of criminal statutes.

[¶27] In addition, the rule applies with greater vigor when the statute establishes an offense which is *malum prohibitum*, a crime merely because it is prohibited by statute, as opposed to a crime which is inherently immoral and therefore *malum in se*. 3 *Sutherland on Statutory Construction*, *supra*, § 59:4. This is because conduct which is otherwise

innocent and lawful should not become criminal without a clear and positive expression of legislative intent. *People v. Adamkeiwicz*, 81 N.E.2d 76, 78 (N.Y. 1948).

[¶28] By these standards, the statute is sufficiently definite and the legislative intent clear. Although the charging statute and definition of medical assistance read in isolation are somewhat ambiguous, that ambiguity is resolved by a review of the entire statutory scheme, including the penalty structure. *See Rodriguez*, ¶ 20, 50 P.3d at 329. In addition, obtaining property by making false statements is *malum in se* – it is a form of theft. The crime of false pretenses has been in existence since at least 1757. 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.7, at 114 (2003). It was prohibited when the statute in question was adopted in 1967 and continues to be a crime today in Wyo. Stat. Ann. § 6-3-407 (LexisNexis 2013).[3] Someone in Mr. Akekale's position could not reasonably have believed, after reading the statute in its entirety, that he could obtain payment for services through the Medicaid program by misrepresenting the work he had performed or the number of clients he served at a time. A review of the penalties in § 42-4-111(b) should have made it clear that misrepresentations resulting in payment of over $500 were felonies.

[¶29] We next consider whether the evidence is sufficient for a jury to conclude that each element of the crime was proven beyond a reasonable doubt. *Anderson v. State*, 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo. 2009). In this case, the State presented evidence that on numerous occasions Mr. Adekale billed for services he did not perform. In accord with our discussion above, this is precisely the behavior the legislature criminalized when it passed § 42-4-111. Thus, a jury could conclude beyond a reasonable doubt that he made false statements or misrepresentations in providing medical assistance to Medicaid recipients. For these reasons, we find the district court did not abuse its discretion when it denied Mr. Adekale's motion for judgment of acquittal on this issue.

*Issue II*

[¶30] The second issue raised by Mr. Adekale is whether the district court abused its discretion when it denied his motion for judgment of acquittal because the State failed to prove the instructional element concerning the dates of the alleged fraud. Because a range of dates has previously been acceptable as proof of a charge, we affirm the district court's decision here.

[¶31] As stated above, we review the denial of a motion for judgment of acquittal under a sufficiency of the evidence standard. *See Martinez v. State*, 2009 WY 6, ¶ 11, 199 P.3d

---

[3] The 1957 statute was in a section headed "Cheats, Swindlers, False Pretenses, etc." A person who obtained anything of value worth twenty-five dollars or more was subject to up to ten years of imprisonment. Wyo. Stat. § 6-38 (1957).

526, 530 (Wyo. 2009) (citing *Aragon v. State*, 627 P.2d 599, 602 (Wyo. 1981)). In reviewing the sufficiency of the evidence, we assume evidence favoring the successful party is true and we also afford the successful party every favorable inference that may be drawn from the evidence. *Daley v. Wenzel*, 2001 WY 80, ¶ 24, 30 P.3d 547, 553 (2001). The evidence is sufficient if a jury could conclude that each element of the crime was proven beyond a reasonable doubt. *Anderson*, ¶ 6, 216 P.3d 1145.

[¶32] Regarding dates of a crime, proving criminal activity on a specific date may not be relevant to proving a crime was committed. *Lee v. State*, 2001 WY 129, ¶ 11, 36 P.3d 1133, 1138 (Wyo. 2001). Furthermore, unless time is an essential element of an offense, proving the specific date of the offense is unnecessary. *Spagner v. State*, 2009 WY 12, ¶ 17, n.6, 200 P.3d 793, 801 (Wyo. 2009). Adequate notice, however, may require that the State allege a general time frame within which a crime was committed. *See Lee,* ¶ 11, 36 P.3d at 1138.

[¶33] Here, the State presented Mr. Adekale's billing information and service logs to the jury along with witness testimony explaining how these documents evidence Medicaid fraud. Further testimony regarding Mr. Adekale's pattern of fraud included exhibits with billing dates submitted by Mr. Adekale. The instructions submitted to the jury included a range of dates for each count which corresponds to the charging information in this case.

[¶34] The jury could have reasonably inferred from the testimony and exhibits presented at trial that Mr. Adekale fraudulently billed the Medicaid program on or between the dates provided. From here, the jury could reasonably conclude, beyond a reasonable doubt, that Mr. Adekale made false statements and misrepresentations in violation of § 42-4-111.

*Issue III*

[¶35] Mr. Adekale next challenges the instructions provided to the jury. Specifically, Mr. Adekale argues that the district court abused its discretion when it omitted the statutory definition of "medical assistance," added the term "habilitation services," and denied Mr. Adekale's request for a definition of the term "knowingly" within the instructions.

[¶36] The district court provided instructions that all took the following general form:

> The elements of the crime of Medicaid Fraud as charged in this case under **Count I** are:
> 1. On or between March 1, 2011 and March 31, 2011;
> 2. In Laramie County, Wyoming;

> 3. The Defendant, **Adebowale Oluseyi "Ted" Adekale**;
> 4. Knowingly;
> 5. Made a false statement or misrepresentation;
> 6. In providing Medicaid medical assistance in the form of habilitation services to [the patient], and;
> 7. The value of the medical assistance was greater than five hundred dollars ($500.00).

[¶37] On appeal, challenges to jury instructions are reviewed under an abuse of discretion standard. *Budder v. State*, 2010 WY 123, ¶ 7, 238 P.3d 575, 577 (Wyo. 2010). District courts have substantial latitude to tailor jury instructions to the facts of the case. *Id*. "A trial court does not abuse its discretion by referring the jury to instructions that, when viewed as whole and in the context of the entire trial, fairly and adequately cover the issues." *Id*. As long as the instructions correctly report the law and the charges cover the relevant issues, there is no reversible error. *Garza v. State*, 2010 WY 64, ¶ 19, 231 P.3d 884, 890 (Wyo. 2010).

*Medical Assistance*

[¶38] The instructions given adequately informed the jury of the elements of Medicaid fraud included in § 42-4-111. Reviewing the lengthy discussion of Mr. Adekale's issue with the term "medical assistance" is unnecessary. It is within the discretion of the district court to tailor jury instructions to the particular case. That is exactly what the district court did when it omitted a definition of medical assistance.

[¶39] The State charged Mr. Adekale for making false statements and misrepresenting facts relating to the exchange of benefits he participated in as an authorized provider of Medicaid services. It is entirely possible that both the manner in which the legislature defined "medical services" and the awkward insertion of that term into the charging statute would confuse the jury. The district court recognized that the definition could confuse the jury into believing that the statute criminalizes only fraudulent payments made by Medicaid officials to authorized providers of medical services, and not medical service providers who fraudulently bill for and receive Medicaid payments for services rendered.

[¶40] A provider of Medicaid services who makes false statements and misrepresentations concerning those services is subject to Wyoming's Medicaid fraud statute. That is why Mr. Adekale was charged, that is what the entire trial centered around, and that is what the jury was instructed on.

*Habilitation*

[¶41]  Again, a district court does not abuse its discretion when it provides the jury with instructions that, when considered as a whole and in the context of the entire trial, fairly and adequately cover the issues.  *Budder*, ¶ 7, 238 P.3d at 577.  Throughout trial, the jury considered evidence on the type of services Mr. Adekale provided in addition to the general context of the Medicaid program.  While not specifically defined in the Medicaid statute, "habilitation services" was a term used at trial to describe "[s]ervices provided under a federal home and community based waiver," a type of service eligible for "medical assistance" as defined in § 42-4-102(a)(ii).  Wyo. Stat. Ann. § 42-4-103(a)(xvii) (LexisNexis 2013).  The district court placed the fraud charges in this context when it included the term "habilitation services" in the instructions.  Accordingly, it was within the discretion of the district court to include the term "habilitation services" in Mr. Adekale's jury instructions.

*Knowingly*

[¶42]  Mr. Adekale's contention that the district court abused its discretion when it omitted a definition of the term "knowingly" is misplaced.  The 2012 statute, under which the State charged Adekale, and which was in effect at the time of trial included no such definition.  *See* 2013 Wyo. Sess. Laws, ch. 118, sec. 2.  Unless otherwise defined by statute, the term "knowingly" requires no clarification because the legal meaning of the term is not so separate from its ordinary meaning.  *Morris v. State*, 2009 WY 88, ¶ 16, 210 P.3d 1101, 1105 (Wyo. 2009).

[¶43]  Furthermore, Mr. Adekale argues for a definition that encompasses a broader possibility of *mens rea* than the ordinary and common understanding of "knowingly" provides.  As we have noted in a prior case, if a lesser *mens rea* suffices to establish an element of a crime, such element is established if a person acts with a greater *mens rea*.  *See O'Brien v. State*, 2002 WY 63, ¶ 20, 45 P.3d 225, 232 (Wyo. 2002) (recognizing that when recklessness suffices to establish an element, such element also is established if a person acts purposely or knowingly).

[¶44]  For all of these reasons, a definition of "knowingly" was properly omitted from the instructions in this case.  In sum, we find no abuse of discretion in the district court's decision to omit definitions of "medical assistance" and "knowingly" and to include the term "habilitation" in its instructions.

*Issue IV*

[¶45]  The last issue raised by Mr. Adekale concerns his illegal sentence.  The State correctly concedes Mr. Adekale's sentence inappropriately incorporated the misdemeanor charge as a felony charge.  The record also supports Mr. Adekale's contention.  Under

12

W.R.Cr.P. 35(a): "The court may correct an illegal sentence at any time." *Coy v. State*, 2014 WY 49, ¶ 21, 322 P.3d 821, 826-27 (Wyo. 2014) (applying W.R.Cr.P. 35(a)). We therefore hold that the district court erred in its sentence on Count XVI and remand this case to the district court for a sentence that conforms with § 42-4-111(b)(ii).

## CONCLUSION

[¶46] We reject Mr. Adekale's challenge of the district court's denial of judgment of acquittal as well as his challenge to the jury instructions in this case. We affirm his conviction on all counts but remand this case for resentencing in conformance with Wyo. Stat. Ann. § 42-4-111(b)(ii) (LexisNexis 2013).