STATE of Iowa, Appellee,

v.

Juan Carlos ASTELLO, Appellant.

No. 98–0734.

Court of Appeals of Iowa.

Aug. 27, 1999.

---

Shawn Wehde of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for Appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, Michael L. Zenor, County Attorney, and Richard J. Meyer, Assistant County Attorney, for Appellee.

Heard by HUITINK, P.J., and STREIT and VOGEL, JJ.

HUITINK, P.J.

Juan Astello appeals from his convictions for second-degree murder, first-degree kidnapping, and conspiracy to commit a forcible felony. We affirm.

### I. Background Facts and Proceedings.

Juan Carlos Astello was charged with first-degree murder, first-degree kidnapping, conspiracy to commit a forcible felony, and criminal gang participation in the shooting death of Gregory "Sky" Erickson. Under the State's theory, Erickson was kidnapped and murdered by members of the Los Krazy Boyz, an Estherville Gang, over a disputed drug debt.

According to the State's evidence, Luis Lua and other gang members assaulted and abducted Erickson in Spencer on June 6, 1997. Although not present at the time Erickson was abducted, Astello joined Lua and others later that evening in Estherville. Astello was seen leaving Lua's Estherville residence with Erickson and Ramiro Astello. This group met Ryan Wedebrand and Thomas Mann at a rural Iowa park where Erickson was bound, gagged, and repeatedly beaten by Juan Astello and other gang members present. Although Lua pointed a gun at Erickson, he did not shoot Erickson following a "not here" admonition by another member of the group. Erickson was then placed in the trunk of the car by Astello and others, covered by a garbage bag, and driven to an abandoned Minnesota farmstead where he was shot to death by Lua. While en route to Minnesota, Lua told the others he had enough ammunition for each of them to shoot Erickson. Wedebrand shot Erickson in the hip after Lua fatally shot Erickson in the head. Although others attempted to shoot Erickson after Wedebrand, Lua's gun jammed, and they were unsuccessful.

Astello was first interviewed by police officers on June 15, 1997, as part of an investigation into the suspected disappearance of Shawn Knakmuhs. On that date police stopped Astello's car because it matched the description of a car in which Knakmuhs was last seen. Astello and his passenger, Luis Lua, were asked by authorities to go to the Emmet County Law Enforcement Center for an interview with an investigator from Minnesota. While there, Astello was asked if he knew Knakmuhs or what may have happened to him. Astello denied knowing Knakmuhs or anything about his disappearance.

On June 18, 1998, Astello's car was seized by authorities as part of an investigation into Erickson's death. Astello was told he could obtain a copy of the relevant search warrant at the Emmet County Law

Enforcement Center. While there, Astello was again asked to submit to an interview by authorities. Because Astello was only sixteen years of age, authorities obtained written consent from Astello's father to question Astello. Astello also signed a "Waiver for Juveniles—Sixteen and Over" form consenting to the interview and waiving a number of specified constitutional rights. During this interview Astello was asked about his relationship with Erickson, the last time he saw Erickson, and Astello's activities on June 5 and 6, 1997. Astello denied Erickson was in his car on June 6 or that he was in any way involved in Erickson's murder.

Astello moved to suppress both of these statements and a third statement obtained from him later on June 18, 1997. The district court declined to suppress the June 15 and first June 18 statement after determining both were noncustodial and voluntarily made. The second June 18 statement was suppressed because it resulted from questioning after Astello asserted his Fifth Amendment right to remain silent. Transcripts of the June 15 and first June 18 statements were offered and admitted at trial.

The State's evidence also included photographs, slides, and a videotape depicting Erickson's body at the crime scene and during an autopsy. These exhibits were admitted over Astello's objection to their relevance and inflammatory depictions.

Following trial, the jury found Astello guilty of second-degree murder, first-degree kidnapping, and conspiracy to commit a forcible felony. Astello was sentenced to an indeterminate fifty-year term of incarceration for second-degree murder and a life sentence without the possibility of parole for first-degree kidnapping. The conspiracy count was dismissed.

On appeal, Astello claims: (1) the district court erred in the admission of the photograph and videotape exhibits depicting Erickson's decomposing remains; (2) there is not sufficient evidence supporting the kidnapping conviction; (3) Iowa lacks territorial jurisdiction to prosecute him for murder; (4) the district court erred in failing to suppress his June 15 and June 18, 1997, statements he made to authorities; and (5) he was denied effective assistance of trial counsel.

## II. Territorial Jurisdiction.

■ We review Astello's jurisdictional claims for errors of law. Iowa R.App.P. 4.

■ Astello's jurisdictional claims are premised on the fact Erickson was killed in Minnesota. We rejected a similar claim in *State v. Wedebrand*, 602 N.W.2d 186 (Iowa App.1999), a companion case, citing Iowa's jurisdiction to prosecute offenses committed partly within this state. *See* Iowa Code §§ 803.1(a), .2 (1997). We find it sufficient to note substantial evidence in the record indicating Astello's participation in Erickson's abduction, beating, and transportation to Minnesota. We affirm on this issue.

## III. Motion to Suppress.

Astello's motion to suppress the statements made on June 15 and June 18 were premised on investigating officers' failure to comply with mandatory constitutional and statutory procedures concerning custodial interrogation by law enforcement officials. Specifically, Astello cites failure of investigators to administer *Miranda* warnings and consult his parents before the June 15 interview.[1] Astello also claims investigators' failure to terminate the June 18 interrogation following assertion of his Fifth Amendment right to remain silent

---

1. Iowa Code section 232.11(1)(a) (1997) provides for a child's right to counsel from the time a child is taken into custody. Section 232.11(2) requires a good faith effort to contact a child's parent, guardian, or custodian of the child's custodial status. The child's alleged offense, location, and the right of the parent, guardian, or custodian to visit or confer with the child.

necessitates suppression of any subsequent statements made.

■ Because Astello's constitutional rights are implicated, our review is de novo. *State v. Thomas*, 540 N.W.2d 658, 661 (Iowa 1995). We make an independent evaluation of the totality of the circumstances as shown by the entire record. *State v. Hodges*, 326 N.W.2d 345, 347 (Iowa 1982) (citations omitted).

### June 15 Statement.

■ A person questioned by law enforcement after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). *Miranda* only applies when a defendant is interrogated while in custody. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977); *State v. Cook*, 330 N.W.2d 306, 311–13 (Iowa 1983).

■ The fact that police officers are involved in questioning does not make it a custodial interrogation. *Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714.

[A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Id.* at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719.

■ Iowa has adopted a four-factor test to guide courts in making this determination: (1) the language used to summon a person for question; (2) the purpose, place and manner of interrogation; (3) the extent to which a person is confronted with evidence of his or her guilt; and (4) whether the person is free to leave the place of questioning. *See State v. Deases*, 518 N.W.2d 784, 789 (Iowa 1994) (citations omitted). A fifth factor, age of the person, was subsequently added based on a perceived "danger of overwhelming a minor defendant" in this situation. *See State v. Smith*, 546 N.W.2d 916, 922–23 (Iowa 1996).

■ The record indicates Astello was asked rather than directed to go to the Emmet County Law Enforcement Center for questioning. Investigators expressly informed Astello that he was not under arrest and was free to leave the law enforcement center at any time. The resulting questioning was brief, and the interview promptly ended when investigators learned Astello's car was not implicated in their investigation of Shawn Knakmuhs's disappearance.

We, on these facts, find Astello's June 15 interrogation was noncustodial. Neither the obligation to administer *Miranda* warnings or procedures for custodial interrogation of a juvenile were implicated. We affirm on this issue.

*June 18 Statement.*

 Unlike Astello's June 15 encounter with investigators, his interrogation on June 18 was preceded by detailed *Miranda* warnings including his right to counsel. Additionally, Astello's father was present and informed of Astello's situation before either consented to questioning by investigators. Whether the subsequent interrogation was custodial or noncustodial is accordingly inconsequential. *See State v. Mayberry*, 411 N.W.2d 677, 683 (Iowa 1987). The dispositive issue is whether Astello was subjected to interrogation by investigators after invoking his right to remain silent necessitating suppression of any statements he subsequently made.

 If a person either before or during questioning invokes his or her Fifth Amendment privilege against self incrimination, the questioning must cease. *Miranda*, 384 U.S. at 473–74, 86 S.Ct. at 1627–28, 16 L.Ed.2d at 723. This right to cut off questioning must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 103–04, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975); *State v. Snethen*, 245 N.W.2d 308, 314 (Iowa 1976).

Page twenty-one of the transcript of Astello's June 18 statement includes the following exchange:

JA: Okay. (inaudible) What am I here for?

PS: No. because you were willing to answer our questions, and we're asking you the questions, and you're answering them.

JA: Well. I'm done. You're just repeating the same questions.

PS: Well, I don't think I repeated any of the questions.

DJ: I didn't hear any questions repeated.

JA: Well, you're done. I gotta go. I gotta go eat.

PS: Well, I'd like to continue talking, but that's up to you.

JA: Well, I don't. Cuz I'm done. I told you I didn't have that guy in my trunk, haven't seen him for like five months. I'm not involved in this murder. That's what you need, don't you?

Despite these and subsequent statements indicating Astello wanted to end the interrogation, officers nevertheless continued to question him. Both interrogators testified they did not intend to stop questioning Astello until he invoked his right to counsel or physically left the interrogation room. Under these circumstances, we are unable to say Astello's right to cut off questioning was "scrupulously honored," and any statements subsequently made should have been suppressed.

 The erroneous admission of Astello's June 18 statements does not require reversal if the State shows this error was harmless beyond a reasonable doubt. *State v. Hensley*, 534 N.W.2d 379, 382–83 (Iowa 1995) (citations omitted). Our harmless error assessment requires consideration of the evidence actually considered by the jury and the relative probative force of that evidence and the evidence erroneously admitted. *Id.* at 379.

Here, the jury considered testimony from multiple witnesses implicating Astello in planning and participating in Erickson's abduction, beating, murder, and efforts to conceal these offenses. The probative force of this evidence is substantially greater than any negative inference the jury could make from the false statements Astello made in his June 18 statement following assertion of his right to remain silent. We therefore conclude any error resulting from admission of Astello's June 18 statement was harmless beyond a reasonable doubt and affirm on this issue.

**IV. *Admission of Photographic and Videotaped Evidence.***

 The admission or exclusion of photographs or other visual evidence lies in the discretion of the trial court, and we will not interfere in the absence of an

abuse of that discretion. *State v. Aswegan*, 331 N.W.2d 93, 97 (Iowa 1983).

The test for admission of such evidence is two-fold: (1) the evidence must be relevant and (2) if the evidence is relevant the trial court must determine whether the probative value of the exhibits outweighs the prejudice which would be caused by their admission into evidence.

*State v. Oliver*, 341 N.W.2d 25, 33 (Iowa 1983).

■ Astello argues the probative value of this evidence was minimal because he did not contest the manner of Erickson's death and he was not implicated in efforts to dispose of Erickson's remains by burning them. He also contends the prejudice resulting from the gruesome depictions of Erickson's charred, decomposing, and maggot-infested remains substantially outweighed the probative value of this evidence. The State concedes the challenged photographs, slides, and videotape are "distinctly unpleasant," but nevertheless cites their relevance as proof of malice, time, and place of death.

■ Because Astello was charged as an aider and abettor, "the intent of the primary perpetrator is a material element for the jury's consideration." *State v. Allen*, 348 N.W.2d 243, 247 (Iowa 1984). This intent may be inferred from the nature, extent, and severity of the wounds inflicted by an assailant. *Id.* The photographs, slides, and video were accordingly relevant to the manner and means of Erickson's death and were not inadmissable merely because of their capacity to invoke an emotional response. *Aswegan*, 331 N.W.2d at 97. We have noted "murder is often a gruesome affair giving rise to equally gruesome evidence." *State v. Fetters*, 562 N.W.2d 770, 778 (Iowa App.1997). Moreover, the State is entitled to show the crime scene and condition of the victim even if the cause or manner of death is not disputed. *Allen*, 348 N.W.2d at 247. Because the probative value of this evidence was not outweighed by its prejudicial ef-

fect, we are unable say the district court abused its discretion by admitting it. We affirm on this issue.

## V. Sufficiency of Evidence Supporting Kidnapping Conviction.

■ Astello challenges the sufficiency of the State's evidence supporting the kidnapping conviction by raising two arguments: (1) the State failed to prove he was present or participated in planning Erickson's abduction; and (2) the State failed to offer evidence corroborating the testimony of Astello's two accomplices.

■ Our standard of review on this issue is for errors at law. *State v. Phams*, 342 N.W.2d 792, 795 (Iowa 1983). A jury's guilty verdict is binding upon us unless we conclude the record lacks substantial evidence to support such a finding. *State v. Bush*, 518 N.W.2d 778, 779 (Iowa 1994). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Taft*, 506 N.W.2d 757, 762 (Iowa 1993). Substantial evidence does not, however, denote some elevated quantity of proof. *State v. Anderson*, 517 N.W.2d 208, 211 (Iowa 1994). Rather, the relevant question in our review of the case "is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

We reject Astello's claim that the State failed to prove Astello was present at the time Erickson's abduction was planned. The record indicates Astello was present when his accomplices announced their intention to "tie Sky up, put him in the trunk" and take him to Estherville to "see the man." His absence at the time Erickson was abducted in Spencer is not dispositive. There is substantial evidence that Astello actively participated in Erickson's beating, placement in a garbage bag, and

transportation to the Minnesota farmstead where Erickson was killed.

Iowa Rule of Criminal Procedure 20(3) provides:

> **Corroboration of accomplice or person solicited.** A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

The standard for corroboration of accomplice testimony is well established. In *State v. Ware*, 338 N.W.2d 707, 710 (Iowa 1983), the court stated:

> Corroborative evidence need not be strong and need not be entirely inconsistent with innocence. The existence of corroborative evidence is a legal issue, but its sufficiency is ordinarily a question of fact for the jury. The requirement of corroborative evidence is met if it can fairly be said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime. Corroboration is required not only to provide a firm connection between the accused and the crime but also to enhance the credibility of an accomplice whose involvement in the crime and self-interest in blaming the defendant severely erode his believability.

*Id.* (citations omitted.)

We find ample evidence corroborating testimony of Astello's accomplices. Travis Sheridan testified he saw Astello, Alden, Lua, and Knakmuhs as they were leaving Estherville for Spencer on June 6, 1997. Sheridan also testified Knakmuhs stated they "were going to go up there and take care of Sky." Jamie Struder testified that after the murder Astello bragged that he was present when Lua shot Erickson. We find the foregoing evidence sufficiently corroborative of accomplice testimony offered by the State. *See State v. Willman*, 244 N.W.2d 314, 315 (Iowa 1976) ("There may be a combination of circumstances, singularly unpersuasive but in totality sufficient, to entitle a jury to conclude the accomplice's testimony has been corroborated.").

We affirm on this issue.

### VI. *Ineffective Assistance of Counsel.*

 Our review of an allegation of ineffective assistance of counsel is de novo. *State v. Howes*, 525 N.W.2d 874, 876 (Iowa App.1994). To prevail on his claim of ineffective assistance of counsel, Astello must ultimately show that his attorney's performance fell outside a normal range of competency and that the deficient performance so prejudiced him as to give rise to the reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984); *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992). Where the record on direct appeal is not adequate to permit us to resolve the issue, we preserve the defendant's claim for postconviction proceedings so the facts may be so developed. *State v. Koenighain*, 356 N.W.2d 237, 238 (Iowa App.1984).

 When complaining about the adequacy of his attorney's representation, it is not enough for Astello to simply claim that counsel should have done a better job. *State v. White*, 337 N.W.2d 517, 519 (Iowa 1983). Astello must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome. *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994).

 Astello has raised ten separate claims of ineffective assistance of counsel. His first two claims that trial counsel failed to properly object to various hearsay testimony, as well as his ninth and tenth claims that his counsel failed to properly

communicate during plea negotiations and failed to obtain and present defense evidence, are too general in nature to allow us to preserve them for postconviction proceedings. He has not specifically identified where counsel's deficiency occurred or how competent representation would have changed the outcome of his trial. We therefore do not preserve these issues for postconviction proceedings. *See id.*

Astello also raises his territorial jurisdiction argument, discussed above, as well as his accomplice corroboration claim under the guise of ineffective assistance of counsel. As we have decided these issues on their merits in this direct appeal, these claims are not preserved for postconviction relief proceedings.

■ Finally, Astello has failed to demonstrate he suffered prejudice as a result of his remaining claims of ineffective assistance. Even if his counsel breached an essential duty on any of his remaining claims, Astello cannot demonstrate a reasonable probability that the outcome of his trial would have resulted in an acquittal on any charged offense.

We do not preserve any claims raised by Astello for postconviction relief proceedings. Those claims for which an adequate record exists were either decided adversely to Astello on their merits or for a want of prejudice under the *Strickland* analysis. We affirm Astello's conviction and sentence.

**AFFIRMED.**

SACKETT, C.J., takes no part.