# IN THE COURT OF APPEALS OF IOWA

No. 19-1878
Filed April 14, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KURT ALLEN KRAAI,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Osceola County, Don E. Courtney, Judge.

Kurt Kraai appeals his conviction of second-degree sexual abuse arguing the district court erred in giving the jury a noncorroboration instruction. **AFFIRMED.**

Pamela Wingert, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Doyle, P.J., and Tabor and Ahlers, JJ., but decided en banc.

**TABOR, Judge.**

Kurt Kraai appeals his conviction of second-degree sexual abuse. He claims the district court erred in instructing the jury that "there is no requirement that the testimony of a complainant of sexual offenses be corroborated." We agree giving that noncorroboration instruction was error. But because the jury's guilty verdict was "surely unattributable" to the faulty instruction, we affirm.

### I.      Facts and Prior Proceedings

The State charged Kraai with engaging in a sex act with a child under twelve years old. *See* Iowa Code §§ 702.17(3), 709.1(3), 709.3(1)(b) (2017). At trial, the child testified that Kraai "would make [her] touch his private parts" with her hand. She said he abused her after "pull[ing] up some naughty things on the computer." Kraai testified in his own defense and denied showing the child pornography or committing the alleged sex acts. A jury found him guilty as charged.

### II.      Standard of Review

We review challenges to jury instructions for correction of errors at law. *State v. Hanes*, 790 N.W.2d 545, 548 (Iowa 2010).

### III.      Analysis

This case involves the propriety of instructing the jury that the testimony of a witness who alleges sexual assault needs no corroboration. Here's how the issue unfolded. During a discussion with the court about the proposed jury instructions, Kraai's counsel objected to giving a noncorroboration instruction. The preliminary version read: "There is no requirement that the testimony of a victim of sexual offenses be corroborated and her testimony standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty." The court

verified that language was not from a "stock instruction." Relevant to the issue on appeal, defense counsel argued the instruction "unduly highlight[ed]" the child's testimony. Counsel reasoned "if [the jurors] believe my client's testimony standing alone, then they find him not guilty. So if we want to insert that, we can do that. I just think that this instruction is a problem. It highlights her testimony, and it's unfair."

Lobbying for the noncorroboration instruction, the prosecutor argued:

This is the law. And I don't think that we should be in a position of trying to keep the law from somebody just so defense can argue easier. Certainly, I'm sure that we will hear that there's no actual corroboration of her story. . . .
    This [instruction] has been approved.[1] It's been approved as written. And it's even been approved over the very objections that have been given by the defendant.

Siding with the State, the court decided to give the noncorroboration instruction. At Kraai's request, the court changed the word "victim" to "complainant."

When the court presented its final proposed instructions, Kraai's counsel again objected to including the noncorroboration instruction. He argued the proposed instruction differed from the noncorroboration instructions challenged in *Altmayer* and *Barnhardt*, insisting the appellate courts had not approved the instruction as written. Counsel argued: "I don't like it, but I think it would be sufficient just to say, 'There's no requirement that the testimony be corroborated.'"

---

[1] The State relied on two of our unpublished decisions: *State v Altmayer*, No. 18-0314, 2019 WL 476488 (Iowa Ct. App. Feb. 6, 2019) and *State v. Barnhardt*, No. 17-0496, 2018 WL 2230938 (Iowa Ct. App. May 16, 2018).

The prosecutor again defended giving the instruction:

We have certain cases that do require corroboration. This does not. And this comes about because defense attorneys make these arguments all the time that are contrary to law, and we don't have the law to show the jury. If they don't believe her, then they obviously believe the defendant.

Defense counsel scorned the notion that highlighting the weaknesses in the State's case would contradict the law:

I'm fully free to argue there's a lack of evidence. I don't even have the intent to use the word "corroborate" in my entire closing argument but I will argue lack of evidence. The reasonable doubt instruction says I can. It's not against the law. It's not illegal. It's not contrary to law for me to argue lack of evidence.

The court held to its decision to instruct the jurors on noncorroboration, asking defense counsel his preference for the wording. Counsel answered: "In a perfect world, I'd like it not to be there." But counsel compromised with the State on a scaled-down version of the instruction. As submitted to the jury, the instruction read: "There is no requirement that the testimony of a complainant of sexual offenses be corroborated."[2]

Kraai now contends the court should have sustained his objection to the noncorroboration instruction. Why was the instruction improper? His reasons are threefold: (1) the instruction is "a legal statement of the reviewing court's standard of review of such evidence and it is not relevant to the jury's function"; (2) the

---

[2] We recognize our supreme court recently rejected a challenge to an instruction nearly identical to the one originally proposed in this case. *See State v. Donahue*, ___ N.W.2d ___, ___, 2021 WL 1149140, at *7 (Iowa 2021). But in that appeal, Donahue attacked the instruction only because it included the plural phrase "sexual offenses" when he was charged with one crime. *Id.* ("Donahue argues that the instructions prompted the jury to ponder the multiple acts and therefore prejudiced his conviction."). The supreme court's holding was limited to his complaint about that wording.

instruction bolsters the credibility of the child's statements over other testimony in the record, including his own; and (3) the instruction violates Iowa Code section 709.6, which states, "No instruction shall be given in a trial for sexual abuse cautioning the jury to use a different standard relating to a victim's testimony than that of any other witness to that offense or any other offense."

Before reaching the merits of Kraai's arguments, we take a detour to examine the origin of section 709.6 and the history of the corroboration requirement. Through much of the twentieth century, Iowa courts uniformly instructed juries that because "rape is easy to charge and difficult to disprove," the word of a "prosecutrix" was not enough, standing alone, to convict her assailant. *See State v. Feddersen*, 230 N.W.2d 510, 514 (Iowa 1975) (citing *State v. Griffith*, 45 N.W.2d 155 (Iowa 1950)). That pernicious and outdated caution is dubbed the Lord Hale instruction, named for England's Sir Matthew Hale, chief justice of the Court of the King's Bench from 1671 to 1676. *See Mark v. State*, 556 N.W.2d 152, 154 (Iowa 1996) (citing *Feddersen*, 230 N.W.2d at 514–15). In his writings, Hale recounted allegations of rape instigated by false accusations. *See People v. Rincon-Pineda*, 538 P.2d 247, 255 (Cal. 1975). Hale also heartily encouraged that rape "be punished with death." *Feddersen*, 230 N.W.2d at 514.

Under Iowa law, a defendant could not be convicted of rape "upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense." *See* Iowa Code § 782.4 (1973). But in 1974, the legislature removed the need for corroborative evidence in rape prosecutions. *Feddersen*, 230 N.W.2d at 514. Our

supreme court followed suit, disapproving the Lord Hale instruction the next year.

*Id.* *Feddersen* found "at least four vices" in the cautionary instruction:

> First, it constitutes a comment on the evidence. Second, it applies a stricter test of credibility to the rape victim than to other witnesses in the trial. Third, it applies a stricter test of credibility to rape victims than to victims of other crimes. Fourth, trial courts have been accorded an indiscriminate right to give or refuse to give the instruction absent any guidelines for so doing.

*Id.* at 515.

After *Feddersen*, the legislature enacted section 709.6 to ensure that juries applied the same standard to the testimony of alleged victims of sexual abuse as other witnesses. It's likely the legislature intended that statute to be the final nail in the coffin of Lord Hale instructions. Considering that legislative intent, in *Barnhardt*, we reasoned that relying on section 709.6 to dispute the noncorroboration instruction "turn[ed] the statute on its head." *Barnhardt*, 2018 WL 2230938, at *4.

Yet a close reading of the statute reveals a broader purpose. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("[T]he purpose [of a statute] must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires."). Section 709.6 prohibits any instruction that cautions jurors to use a "different" standard for evaluating the testimony of an alleged sexual-abuse victim than for any other witness. In common parlance, "different" means "unlike in form, quality, amount or nature, dissimilar." *Different*, American Heritage Dictionary (2d Coll. ed. 1982). The State would have us read "different" as banning only the use of a more stringent or exacting standard for assessing the credibility

of rape victims. But "different" can ratchet both ways. By its terms, section 709.6 also prohibits courts from instructing jurors to use a less rigorous or more relaxed standard for appraising the testimony of an alleged sexual-abuse victim than other witnesses.

The noncorroboration instruction here violated that prohibition. It singled out the testimony of the "complainant" as not requiring corroboration. Because it mentioned only the complaining witness, the jurors could have believed that the testimony of other witnesses, particularly the accused, *did* require corroborating evidence to be believed. Because of that asymmetry, we agree with Kraai that the challenged instruction defied section 709.6.

Setting the statute aside, the State insists the court had to give the noncorroboration instruction because it was a "true statement of law." Agreed, "Iowa law requires a court give a requested instruction as long as the instruction is a correct statement of law, is applicable to the case, and is not otherwise embodied elsewhere in the instructions." *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 10 (Iowa 2019). But *Eisenhauer* also explains that this principle "does not require a court give instructions that provide undue emphasis to any particular aspect of the case" or "that duplicate specifications adequately encompassed elsewhere in the instructions." *Id.*; *see State v. Milliken*, 204 N.W.2d 594, 596 (Iowa 1973) (collecting cases).

So not every legal principle bearing on a case must find its way into a jury instruction. *See, e.g., State v. Becker*, 818 N.W.2d 135, 160 (Iowa 2012), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016) (rejecting argument that court should have instructed jury on consequences

of not-guilty-by-reason-of-insanity verdict). "Even accurate statements of the law should not be used in jury instructions if they are misleading" and "it is error to include statements of the law without instructing the jury on how to apply them." *See State v. Robinson*, 859 N.W.2d 464, 491 (Iowa 2015) (Wiggins, J., specially concurring) (quoting *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1110 (Colo. 1982)).

Those concerns arise here. The challenged instruction informed the jurors that the complainant's testimony did not require corroboration. But it did not tell them what to do with that legal principle. As Kraai contends, the instruction was an accurate statement of law, but it was "not relevant to the jury's function." Granted, sometimes the jury has a role in deciding if the State has presented enough corroborative evidence. *See, e.g.*, *State v. Astello*, 602 N.W.2d 190, 198 (Iowa Ct. App. 1999) (discussing sufficiency of evidence corroborating accomplice testimony). But in those instances, Iowa's uniform instructions explain how the jury should evaluate the other evidence.[3]

---

[3] For example:

> A person cannot be convicted only by the testimony of an accomplice. The testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the crime. If you find (name of witness) is an accomplice, the defendant cannot be convicted only by that testimony. There must be other evidence tending to connect the defendant with the commission of the crime. Such other evidence, if any, is not enough if it just shows a crime was committed. It must be evidence tending to single out the defendant as one of the persons who committed it.

Iowa Crim. Jury Instruction No. 200.4 (2018).

Adding to the confusion, the court did not define "corroborated." And this legal term "is likely not self-evident to the lay juror."[4] *See Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003). Not only is the word "corroborated" undefined, but it is without context. Without a definition or context for the concept of "corroboration," the instruction did not enlighten the jury.[5] "Jurors may interpret this instruction to mean that baseless testimony should be given credit and that they should ignore inconsistencies, accept without question the witness's testimony, and ignore evidence that conflicts with the witness's version of events." *See id.*

But even if the noncorroboration instruction were relevant to the jury's fact-finding role, the concept found voice in other instructions. The court advised the jurors that (1) they must give all evidence the weight and value they thought it could receive; (2) they must decide the facts from the evidence by using their observations, common sense, and experience; (3) they must try to reconcile any conflicts in the evidence, but if they could not, they should accept the evidence they found more believable; (4) they could believe all, part, or none of any witness's testimony; and (5) they could consider several factors in deciding what testimony

---

[4] The State cites a law review article criticizing this reasoning: "These courts take a rather dim view of jurors' reading comprehension." Tyler J. Buller, *Fighting Rape Culture with Noncorroboration Instructions*, 53 Tulsa L. Rev. 1, 26 (2017). That harsh criticism misses the point. Corroboration is a legal term of art and requires more than an understanding of the dictionary definition. *See generally State v. Polly*, 657 N.W.2d 462, 467 (Iowa 2003) (discussing corroborative evidence).

[5] Another example involving noncorroboration illustrates this point. In a prosecution when the court determines that John Doe, as a matter of law, is not an accomplice, the court would not instruct the jury that John Doe's testimony needs no corroboration. To do so would be question begging. The jury would have no reason to view John Doe's testimony any differently from that of other witnesses. That scenario would be true even if defense counsel pointed out the lack of evidence supporting John Doe's version of events.

to believe.[6]  Because the court already instructed the jury how to assess the credibility and weigh the testimony of all witnesses, the noncorroboration instruction confused matters by commenting on the testimony of a particular witness.

In Kraai's case, both sides were free to argue whether the State offered proof beyond a reasonable doubt to convict based on the child's testimony, either alone or together with any corroborative evidence.  *See Gutierrez v. State*, 177

---

[6] These concepts were set forth in instruction numbers 9 and 10, which followed the Iowa State Bar Association uniform criminal jury instructions numbers 100.6 and 100.7, respectively.
Instruction number 9 read:
> In considering the evidence, make deductions and reach conclusions according to reason and common sense.  Facts may be proved by direct evidence, circumstantial evidence, or both.  Direct evidence is evidence from a witness who claims actual knowledge of a fact, such as an eyewitness.  Circumstantial evidence is evidence about a chain of facts which show a defendant is guilty or not guilty.  The law makes no distinction between direct evidence and circumstantial evidence.  Give all the evidence the weight and value you think it is entitled to receive.

Instruction number 10 read:
> Decide the facts from the evidence.  Consider the evidence using your observations, common sense and experience.  Try to reconcile any conflicts in the evidence; but if you cannot, except the evidence you find more believable.
>
> In determining the facts, you may have to decide what testimony you believe.  You may believe all, part or none of any witness's testimony.
>
> There are many factors which you may consider in deciding what testimony to believe, for example:
>
> 1. Whether the testimony is reasonable and consistent with other evidence you believe;
>
> 2. Whether a witness has made inconsistent statements;
>
> 3. The witness's appearance, conduct, age, intelligence, memory and knowledge of the facts; and
>
> 4. The witness's interest in the trial, his or her motive, candor, bias and prejudice.

So. 3d 226, 233 (Fla. 2015) (holding lack of corroboration was proper subject of argument, not jury instruction). And they did. The prosecutor stressed that the child's testimony matched other evidence. Defense counsel characterized the child's allegations as "generic" and described "a lack of evidence." He also pointed to the testimony of his client, who consistently denied the allegations. But the noncorroboration instruction highlighted the testimony of just the child. It was improper because of that asymmetry.

We join at least eight other jurisdictions that have disapproved of giving noncorroboration instructions. *See Burke v. State*, 624 P.2d 1240, 1257 (Alaska 1980) (concluding instruction "unduly emphasized" victim's testimony without "similarly indicating that other witnesses' testimony need not be corroborated"); *Gutierrez*, 177 So. 3d at 229–30 (finding "no corroboration" instruction was improper; while correctly stating the law, the instruction "constitutes a comment on the testimony presented by the alleged victim and presents an impermissible risk that the jury will conclude it need not subject the victim's testimony to the same tests for credibility and weight applicable to other witnesses"); *Ludy*, 784 N.E.2d at 461 (determining "instruction directed to the testimony of one witness erroneously invades the province of the jury when the instruction intimates an opinion on the credibility of a witness or the weight to be given to his testimony"); *State v. Williams*, 363 N.W.2d 911, 914 (Minn. Ct. App. 1985) (stating lack of corroboration was evidentiary matter, not substantive one, and did not belong in jury instruction); *State v. Schmidt*, 757 N.W.2d 291, 297 (Neb. 2008) (concluding instruction was "redundant and unnecessary" and should not be given "in the absence of special circumstances"); *State v. Stukes*, 787 S.E.2d 480, 483 (S.C. 2016) (finding "the

charge invites the jury to believe the victim"); *Veteto v. State*, 8 S.W.3d 805, 816 (Tex. Ct. App. 2000) (concluding instruction was improper comment on weight of the evidence), *abrogated on other grounds by State v Cook*, 248 S.W.3d 172 (Tex. Crim. App. 2013); *Garza v. State*, 231 P.3d 884, 891 (Wyo. 2010) (finding instruction "highlighting or denigrating" victim's testimony had potential to mislead the jury).

But as is often the case, not all jurisdictions agree. At least eight other jurisdictions have approved giving a noncorroboration instruction in sexual abuse cases. *See, e.g.*, *People v. Gammage*, 828 P.2d 682, 687 (Cal. 1992) (majority finding "continuing vitality in instructing juries that there is no legal requirement of corroboration" in sexual-abuse cases; with concurring justices discouraging continued use of instruction); *Mency v. State*, 492 S.E.2d 692, 699–700 (Ga. Ct. App. 1997) (concluding instruction was "appropriate statement of relevant law" in child molestation case when considered with instructions on burden of proof); *People v. Welch*, Crim. No. 90-00008A, 1990 WL 320365, at *1 (D. Guam App. Div. Oct. 30, 1990) (determining instruction, taken in context, did not unduly call attention to the victim's testimony); *People v. Smith*, 385 N.W.2d 654, 657 (Mich. Ct. App. 1986) (stating instruction correctly conveyed Michigan statute and applied in Smith's case "since defense counsel vigorously argued in closing that, because of the strength of the alibi defense, the jury should insist on some corroborative evidence, which the prosecution had failed to supply"); *Pitts v. State*, 291 So. 3d 751, 757–59 (Miss. 2020) (finding instruction was not improper comment on weight of the evidence); *Gaxiola v. State*, 119 P.3d 1225, 1231–32 (Nev. 2005) ("A 'no corroboration' instruction does not tell the jury to give a victim's testimony greater

weight, it simply informs the jury that corroboration is not required by law."); *State v. Marti*, 732 A.2d 414, 420–21 (N.H. 1999) (concluding instruction was "merely a correct statement of law"); *State v. Zimmerman*, 121 P.3d 1216, 1223 (Wash. Ct. App. 2005) (following precedent, but expressing misgivings).[7]

All things considered, we find the decisions disapproving of the noncorroboration instructions to be more persuasive than the conclusions of jurisdictions finding no error in its submission. And as already noted, barring the noncorroboration instruction is consistent with Iowa law.

On the home front, two panels of this court have rejected challenges to noncorroboration instructions. *See Altmayer*, 2019 WL 476488, at *5; *Barnhardt*, 2018 WL 2230938, at *4. In *Altmayer*, the instruction read:

> You should evaluate the testimony of N.D. the same way you evaluate the testimony of any other witness. The law does not require that the testimony of N.D. be corroborated in order to prove that she was sexually abused. You may find the Defendant guilty of Sexual Abuse if N.D.'s testimony convinces you of guilt beyond a reasonable doubt.[8]

---

[7] The Washington Supreme Court Committee on Jury Instructions recommends against giving such an instruction:
> The matter of corroboration is really a matter of sufficiency of the evidence. An instruction on this subject would be a negative instruction. The proving or disproving of such a charge is a factual problem, not a legal problem. Whether a jury can or should accept the uncorroborated testimony of the prosecuting witness or the uncorroborated testimony of the defendant is best left to argument of counsel.

11 WPIC, § 45.02, cmt. at 561 (2d ed.1994).

[8] Seizing on that language, Kraai now contends "if it is appropriate to provide a noncorroboration instruction to a jury deciding a sexual abuse trial in Iowa, then the instruction should have explained that the complainant's testimony should be considered in the same manner as other witnesses, including the Defendant." The State argues that Kraai waived this claim and invited error by encouraging the court to use a shorter instruction. We disagree. Defense counsel's objections were "sufficiently specific to alert the district court to the legal error in its instruction." *See Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 456 n.10 (Iowa 2016).

2019 WL 476488, at *5.  And in *Barnhardt*, the instruction stated: "The law does not require that the testimony of the alleged victim be corroborated."  2018 WL 2230938, at *4.  Because we did not disapprove the similar instructions in those cases, we understand why the district court rejected Kraai's objections.

Yet, our prior unpublished opinions do not bind us.  On the one hand, our prior opinions serve as guidance for the trial bench and bar.  Thus, we strive for consistency in our panel decisions.  On the other hand, unpublished opinions are not "controlling legal authority."  Iowa R. App. P. 6.904(2)(c); *accord State v. Shackford*, 952 N.W.2d 141, 145 (Iowa 2020) (explaining unpublished decisions are not "precedential"); *State v. Lindsey*, 881 N.W.2d 411, 415 n.1 (Iowa 2016) (noting "unpublished decisions of the court of appeals do not constitute binding authority" but may help "define the issues" before the district court).  When, as here, a prior unpublished panel decision was wrongly decided, our court may go a different direction.  Taking that route today, we disavow *Barnhardt* as much as it endorsed giving a noncorroboration instruction much like the one before us.

Disavowal is the right course.  The corroboration requirement is a relic.  Thanks to systemic reforms, we no longer caution juries to scrutinize the testimony of alleged rape victims more closely than the words of other witnesses.  That said, we must take care to not swing the pendulum too far the other direction by sanctioning an instruction that singles out the alleged victim for special treatment in the minds of the jurors.  In fact, the legislature forbade that swing by enacting section 709.6.

Nevertheless, the State envisions noncorroboration instructions as fulfilling a larger mission. The State argues, "While that jury instruction only mentioned testimony from alleged victims, it described the *same* standard that applied to all testimony—so its only real effect was to dispel a 'rape myth' that lurked in the background." The State also contends that juries need noncorroboration instructions to dispel "institutionalized sexism and anti-victim bias [that] persist in the hearts and minds of jurors." *See* Buller, *Fighting Rape Culture*, 53 Tulsa L. Rev. at 2–3.[9]

Contrary to the State's argument, the instruction here did not tell the jury to apply the *same* standard to all testimony.[10] The court did not convey that equivalency to Kraai's jury. Thus, we hold giving the noncorroboration instruction was error.

But our analysis does not end there. Not every instructional error requires reversal. *State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1983). A jury instruction submitted in error "does not warrant reversal unless it results in prejudice to the complaining party." *State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017) (citation omitted). To assess prejudice, we ask whether the guilty verdict rendered was

---

[9] We quoted this argument with approval in *Barnhardt*, 2018 WL 2230938, at *4. Yet, nothing in our instant record supports the assertion that jurors harbored misconceptions about the corroboration requirement. True, this law review article cites social scientific studies suggesting that some jurors may continue to believe the prosecution must offer evidence to corroborate the testimony of alleged victims of sexual abuse. *See* Buller, *Fighting Rape Culture*, 53 Tulsa L. Rev. at 18. But that is not the type of fact that we can judicially notice. *See* Iowa R. Evid. 5.201(b) (limiting judicial notice to adjudicative facts "not subject to reasonable dispute").

[10] That *was* true for the instruction in *Altmayer*, 2019 WL 476488, at *5. It told the jury to "evaluate the testimony of [the complaining witness] the same way you evaluate the testimony of any other witness." *Id.* But our only task today is to decide the propriety of the instruction given to Kraai's jury.

"surely unattributable" to the faulty instruction. *State v. Shorter*, 945 N.W.2d 1, 9 (Iowa 2020) (citation omitted). "We consider the jury instructions as a whole" rather than in isolation. *State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018).

We can look to the strength of the State's case to decide whether giving an erroneous instruction is harmless. *State v. Gibbs*, 941 N.W.2d 888, 900 (Iowa 2020) (applying standard of harmless beyond a reasonable doubt to jury instruction that violated defendant's constitutional rights). Here, the State offered evidence to corroborate the child's testimony. *See Ludy*, 784 N.E.2d at 463 (deciding noncorroboration instruction was harmless because "clearly the testimony of the victim was not uncorroborated"); *Garza*, 231 P.3d at 891 ("Since there was some corroboration of the victim's testimony, the challenged instruction, in essence, pertained to a moot point."). For example, the child testified Kraai showed her "naughty" things on the computer and television and left pornographic videos and magazines "scattered all over the house, like some would be in the couch and like DVD cases or just laying around." Sure enough, investigators found that evidence when searching Kraai's house.

The child also testified to details about sexual matters outside the ken of someone her age. For instance, she recalled that Kraai's penis felt "slimy and disgusting." She also remembered touching and seeing a silver ring "on the tip" of Kraai's penis. That intimate information buttressed the child's allegation that Kraai made her touch his penis, even if he offered a facile explanation in his testimony that the child may have accidentally seen him "in the shower or going to the bathroom."

What's more, the jury was not left to decipher the noncorroboration instruction in a vacuum. The instructions as a whole, including the description of the State's burden of proof, fairly guided the jury's decision making. Plus, the parties' closing arguments accurately informed the jurors that it was up to them whether to believe the child's testimony. On this record, the guilty verdict was "surely unattributable" to the faulty instruction.

**AFFIRMED.**