# IN THE COURT OF APPEALS OF IOWA

No. 20-0479
Filed December 15, 2021

**DAN DORRIS,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

 Appeal from the Iowa District Court for Pottawattamie County, Richard H. Davidson, Judge.

 Dan Dorris appeals the denial of his second application for postconviction relief. **AFFIRMED.**

 Justin R. Wyatt of Woods, Wyatt & Tucker, PLLC, Glenwood, for appellant.

 Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee State.

 Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

With the hope that DNA testing of a pay phone receiver and cord would exonerate him, Dan Dorris filed his second postconviction relief application more than two decades after his convictions for first-degree murder and willful injury in the 1998 shooting death of Timothy Osbourn. The district court found that Dorris's application was time-barred under Iowa Code section 822.3 (2018) despite his claim that his trial and postconviction relief counsel were ineffective. We agree and affirm the court's summary disposition of Dorris's application.

Timothy Osbourn was shot dead in 1998 while walking near his home. After the shooting, witnesses saw two men get into a car that was parked the wrong way on the street and drive to a nearby pay phone. The driver of the car got out, used the phone, and then drove away with the other man. The phone receiver and cord were collected as evidence and tested for fingerprints. A latent fingerprint and palm print were recovered. Neither matched Dorris. He was nevertheless arrested for Osbourn's murder after a witness told police that he was with Dorris when he shot Osbourn.

Dorris's trial counsel elected to defend him using an "alternative shooter" strategy. They considered having the prints recovered from the phone receiver and cord compared against other suspects in the murder but decided not to because, as one of the attorneys explained,

> We couldn't be 100 percent sure that if we tested it, that the answer we would get would help us, so we can not test it and argue, look, the State didn't even bother to test this; you know, the real shooter's fingerprints are probably on it, or if we test it and they're not on it, we don't get to argue that anymore.

In Dorris's direct appeal from his convictions, he raised multiple claims of ineffective assistance of counsel. *State v. Dorris (Dorris I)*, No. 98-1904, 2000 WL 1005436, at *4 (Iowa Ct. App. June 28, 2000). We affirmed his convictions, finding "the State laid out overwhelming evidence of Dorris's guilt," but preserved his ineffective-assistance-of-counsel claims for postconviction relief. *Id.* at *3-4.

Dorris filed his first postconviction relief application in 2003. The protracted proceedings spanned twelve years and three different attorneys before the application was denied in February 2016. One of the issues in Dorris's first postconviction action was whether trial counsel was ineffective for failing "to have the phone receiver checked for the fingerprints" of two other suspects. Postconviction counsel was able to have that testing completed which, as Dorris's trial counsel feared, showed neither suspect's prints matched those recovered from the receiver and cord. This court affirmed the denial of Dorris's postconviction relief application in *Dorris v. State (Dorris II)*, No. 16-0488, 2017 WL 104948, at *1 (Iowa Ct. App. Jan. 17, 2017). Procedendo issued on March 2, 2017.

Dorris filed a second postconviction application in October 2018, claiming he received ineffective assistance of trial and postconviction counsel. Focusing again on the phone receiver and cord, Dorris alleged exculpatory DNA evidence "may exist" on those items. After an unreported hearing, the district court granted the State's motion for summary disposition and denied Dorris's motion for DNA testing. The court determined that Dorris's claim was based on a ground of fact that could have been raised within three years from when procedendo issued after his direct appeal and was therefore barred by section 822.3. The court also found that Dorris failed to show his counsel was ineffective by not requesting DNA testing

because, given the evidence of his guilt, there is no reasonable probability that he would not have been convicted even if another person's DNA was on the evidence.

On appeal, Dorris challenges the determination that (1) his second postconviction relief action is untimely, (2) the failure to formally report the hearing, and (3) the denial of his application for DNA testing. We review summary disposition of a postconviction action for errors at law. *See Schmidt v. State*, 909 N.W.2d 778, 784 (Iowa 2018). To the extent that Dorris claims ineffective assistance of counsel, our review is de novo. *See State v. Harris*, 891 N.W.2d 182, 185 (Iowa 2017). Dorris must show both that his trial counsel failed to perform an essential duty and that this failure resulted in prejudice. *See id.* To establish prejudice, Dorris must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 185-86 (citation omitted).

## I.      *Timeliness*

When Dorris filed his second postconviction relief application, Iowa Code section 822.3 required that all "applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." The statute goes on to provide that this limitation "does not apply to a ground of fact or law that could not have been raised within the applicable time period." Iowa Code § 822.3. The district court found Dorris's claims were untimely because he could have raised them within that period, which expired in 2003. But Dorris contends that his claims fall under the exception set forth in *Allison v. State*, 914 N.W.2d 866, 891 (Iowa 2018), which held

> that where a PCR petition alleging ineffective assistance of trial counsel has been timely filed per section 822.3 and there is a successive PCR petition alleging postconviction counsel was ineffective in presenting the ineffective-assistance-of-trial-counsel claim, the timing of the filing of the second PCR petition relates back to the timing of the filing of the original PCR petition for purposes of Iowa Code section 822.3 *if the successive PCR petition is filed promptly after the conclusion of the first PCR action.*

*Id.* (emphasis added).[1]  Dorris cannot claim the benefit of this relation-back doctrine because his successive postconviction application was not filed promptly after the conclusion of his first.  Unlike *Allison*, where the second postconviction relief action was filed less than two months after this court affirmed the denial of the first, Dorris waited more than eighteen months to initiate his second application. This court has "repeatedly concluded that 'delays [of] one year or more' are not sufficiently 'prompt'" to fall under the *Allison* exception.  *Johnson*, 2021 WL 210700, at *2 (citation omitted).  Because the second application was not "promptly filed" after the conclusion of the first, the exception set forth in *Allison* is inapplicable.

---

[1] After Dorris filed his second postconviction relief application, the legislature effectively abrogated the *Allison* holding by amending section 822.3 to state a claim of ineffective assistance of counsel in a prior action "shall not toll or extend the limitation periods in this section nor shall such claim relate back to a prior filing to avoid the application of the limitation periods."  *See* 2019 Iowa Acts ch. 149, § 8. Questions remain as to whether the amended legislation applies to applications that, like Dorris's second application, were pending when it took effect.  *See, e.g.*, *Moon v. State*, No. 19-2037, 2021 WL 610195, at *4 n.6 (Iowa Ct. App. Feb. 17, 2021) ("This amendment appears to abrogate *Allison*, although it is not yet clear what PCR applications the amended legislation affects."); *Johnson v. State*, No. 19-1949, 2021 WL 210700, at *3 (Iowa Ct. App. Jan. 21, 2021) ("There is a question, however, as to whether the amendment applies to Johnson's case, which was filed in June 2019.").  But the State does not dispute that *Allison* applies, and its application has no bearing on the outcome.

## II.    *Unreported Hearing*

Dorris next contends the district court erred by failing to formally report the hearing on his motion for scientific testing and the State's motion for summary disposition.  He relies on Iowa Code section 822.7, which states that a record of the postconviction-relief proceedings "shall be made and preserved."  But formal reporting is statutorily required only for the evidentiary hearing on the merits of a postconviction-relief claim.  *See Arnold v. State*, 540 N.W.2d 243, 246 (Iowa 1995). The court did not err by conducting the hearing without formal reporting.

Dorris also contends his postconviction counsel was ineffective by failing to demand that the proceedings be reported.  Without further explanation, Dorris argues "his application for postconviction relief would have been granted had there been a formal record."  The remedy to Dorris's concern lies in Iowa Rule of Appellate Procedure 6.806, which allows a party "to create a record of a hearing or trial for which a transcript is unavailable if a party deems it necessary to complete the record on appeal."  Dorris did not avail himself of this remedy, and he fails to show how his counsel was ineffective by failing to demand formal reporting.  *See State v. Astello*, 602 N.W.2d 190, 198 (Iowa Ct. App. 1999) ("[Defendant] must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome.").

## III.    *DNA Testing*

Finally, Dorris claims his postconviction counsel failed to brief or sufficiently explain his application for scientific testing as required by Iowa Code section 81.10 in two respects.  First, he contends that counsel failed to state "[w]hether any

issues of police or prosecutor misconduct have been raised in the past or are being raised by the application." Iowa Code § 81.10(2)(g). On appeal following the denial of his first postconviction relief action, Dorris alleged his postconviction counsel was ineffective for failing to investigate whether prosecutorial misconduct occurred based on the prosecutor's convictions for mishandling drug evidence ten years after Dorris's convictions. We rejected this claim because Dorris did not make "any showing of how the prosecutor's subsequent legal problems impacted Dorris's criminal trial many years earlier." *Dorris II*, 2017 WL 104948, at *4.

Dorris also contends his postconviction counsel failed to explain "why the requested DNA profiling of the forensic sample is material to the issue in the case and not merely cumulative or impeaching." Iowa Code § 81.10(2)(k). He speculates that DNA testing of the phone receiver would show the DNA of the State's main witness.[2] Dorris concedes that this court found overwhelming evidence of his guilt on direct appeal. *Dorris I*, 2000 WL 1005436, at *3. But he argues that the presence of the witness's DNA on the receiver would show the witness lied, thus undermining confidence in his conviction.

In rejecting Dorris's request for DNA testing, the court explained why the DNA test results would not have changed the outcome of trial:

> [T]he facts relied upon by the jury and the court included Dorris's own admissions to multiple people that he had shot Osbourne. In addition, witnesses saw Dorris with a gun following the shooting as well as witness's testimony that they saw Dorris throw the gun into the river. Any possible evidence of another person's DNA on the phone receiver would not prove that Dorris did not shoot the victim.

---

[2] We note that speculation that DNA testing could be exculpatory is not sufficient to avoid summary disposition. *See Cannon v. State*, No. 17-0888, 2018 WL 2727723, at *1 n.2 (Iowa Ct. App. June 6, 2018).

We concur with this assessment.  Even if we assume DNA testing would show this witness's DNA on the phone receiver, it does not undermine our confidence in the verdict in light of the overall evidence of Dorris's guilt.

    **AFFIRMED.**