# IN THE COURT OF APPEALS OF IOWA

No. 23-1288
Filed February 5, 2025

**RAPHAEL WILSON CLARKE,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Melissa Anderson-Seeber, Judge.

An applicant for postconviction relief (PCR) argues his trial counsel and PCR counsel rendered ineffective assistance. **AFFIRMED.**

Jesse A. Macro Jr. of Macro Law, LLP, Des Moines, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee State.

Considered by Greer, P.J., Langholz, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**CARR, Senior Judge.**

Raphael Clarke, who entered *Alford*[1] pleas to the charges of assault while displaying a weapon and child endangerment, appeals the district court's denial of his postconviction relief (PCR) application. He argues his trial counsel rendered ineffective assistance in failing to inform him of the immigration consequences of his *Alford* plea and his PCR counsel was ineffective in failing to properly present his trial counsel's ineffectiveness. We affirm.

## I. Background Facts and Proceedings

In July 2019, Clarke got into an argument with the father of his child's mother, drove his vehicle at the man, and crashed into a garage while his child and the child's mother were in the vehicle. Clarke, a refugee from Côte d'Ivoire, was charged with assault while displaying a weapon, child endangerment, and criminal mischief in the third degree later that month. He was represented by a Waterloo public defender during those proceedings.

Clarke entered his *Alford* pleas on the first two counts in October,[2] and was sentenced later that month to seventy days in jail for each count, to run concurrently. Following sentencing, Clarke was taken into the custody of Immigration and Customs Enforcement (ICE) and held in the Hardin County jail to await a deportation hearing.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding "express admission of guilt . . . is not a constitutional requisite to the imposition of [a] criminal penalty").
[2] The third count, criminal mischief in the third degree, was dismissed.

Clarke applied for PCR in February 2020, and "at some point" after that he was deported to Liberia.[3] The PCR trial was held in May 2022, and the district court denied Clarke's PCR application in its entirety in August 2023.

Clarke now appeals.

## II. Standard of Review

We review claims of ineffective assistance of counsel de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III. Discussion

Clarke argues his trial counsel was ineffective in failing to properly advise him of the immigration consequences of his criminal case. He also argues his PCR counsel was ineffective in failing to properly demonstrate his trial counsel's failure to properly advise him.

"In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). "An attorney breaches an essential duty when counsel's representation falls below an objective standard of reasonableness." *Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011) (cleaned up).

"When complaining about the adequacy of his attorney's representation, it is not enough for [an applicant] to simply claim that counsel should have done a better job." *State v. Astello*, 602 N.W.2d 190, 198 (Iowa Ct. App. 1999). The

---

[3] Clarke was deported to Liberia, a country he does not originate from and of which he is not a citizen, based on ICE's assessment that it was not safe to deport individuals to Côte d'Ivoire at that time.

applicant must "state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." *Id.* "A showing that the error 'conceivably could have influenced the outcome' of the proceeding is not enough." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Defense counsel has a responsibility to inform a defendant of "all the adverse immigration consequences" related to the defendant's criminal charges "that competent counsel would uncover." *See Diaz v. State*, 896 N.W.2d 723, 732 (Iowa 2017). It is not enough for the attorney to "only advise [the defendant] that the chances of deportation are certain or possible." *Id.* The specific consequences under the immigration statutes "need to be explained with reasonable clarity so a full and measured decision to plead guilty can be made." *Id.*

Clarke alleges his counsel only advised him about the issue of deportation and failed to advise him on "removal, exclusions, bars of relief from removal, immigration detentions, denial of citizenship and consequences to applicant's family," as required by *Diaz*. The problem with Clarke's contention is that his trial counsel testified that he did advise Clarke of the immigration consequences. Despite Clarke testifying otherwise, the district court found his trial counsel to be more credible on this issue.

And the record does not support Clarke's contention that his trial counsel failed to advise him of the other immigration consequences. Because the record supports a finding that Clarke's trial counsel competently informed of the

immigration consequences, we do not agree that his PCR counsel failed to adequately question trial counsel "on the other requirements of *Diaz*."

*Diaz* stands for the principle that trial counsel should inform the defendant of "all the adverse immigration consequences that competent counsel would uncover." 896 N.W.2d at 732. Clarke's trial counsel admitted that he is not an immigration expert but testified that he specifically consulted with a fellow public defender who is an immigration specialist. He stated that the immigration attorney "has a worksheet that we filled out" and, based on the information he provided her, "she [s]ends us an email related to the possible ramifications to the plea and different types of charges, whether it would lead to removal, future claims of status, the ability to come back, that sort of thing." That list of potential immigration ramifications coincides with the immigration considerations described in *Diaz*. Trial counsel took the email from the immigration specialist to the jail, met with Clarke, and reviewed and discussed its contents.

Clarke and his trial counsel also discussed the chances that Clarke, once deported, would be able to "come back" to the United States and had "a lot of discussions . . . about his immigration status." And Clarke's *Alford* plea was entered in an attempt to soften the damage to Clarke's immigration status. Moreover, that written plea states, "I understand that my conviction for the crime or crimes in this guilty plea may result in adverse immigration consequences, including deportation, if I am not a citizen of the United States." Thus, Clarke's trial counsel adequately informed him of the immigration consequences that competent counsel would perceive.

Clarke also claims post-conviction counsel was ineffective, having focused only on the consequence of deportation at the PCR trial, and resultingly did not explore other immigration consequences beyond deportation.  This claim is belied by the transcript, which shows counsel did inquire about the content of the email from immigration counsel on cross-examination.  Trial counsel had the document before him at the time, and summarized its content during the exam.  We see no basis to conclude a more searching examination would have proved fruitful, and thus no basis for relief on this issue.

We affirm the district court's denial of Clarke's PCR application, finding his trial counsel and PCR counsel were not ineffective.

**AFFIRMED.**