**IN THE COURT OF APPEALS OF IOWA**

No. 20-0488
Filed September 1, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICKIE LEE ATKINS,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Decatur County, Dustria A. Relph,

Judge.


        Defendant appeals from his convictions on two counts of sexual abuse in

the second degree. **AFFIRMED**.


        John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.


        Considered by May, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Mickie Atkins appeals from convictions on two counts of sexual abuse in the second degree following a jury trial. Atkins argues the evidence was insufficient to support the jury's verdict, the district court erred in permitting a noncorroboration jury instruction, the district court abused its discretion in admitting prior bad acts evidence, and the district court abused its discretion in imposing consecutive sentences. We find the record contains substantial evidence, the inclusion of the jury instruction does not require reversal, and the district court did not abuse its discretion in admitting evidence or imposing consecutive sentences. Accordingly, we affirm.

## I.      Facts & Prior Proceedings

On January 5, 2018, Atkins was charged with two counts of sexual abuse in the second degree, in violation of Iowa Code section 709.3(1)(b) (2018). Both counts alleged that Atkins committed a sex act upon B.T., a child under the age of twelve, between October 1, 2015, and November 16, 2017.

B.T. was eleven years old at the time of trial. B.T. has a younger brother, L.S., who was nine years old at the time of trial. B.T. and L.S.'s mother is S.S. S.S.'s mother, B.A., is married to Atkins. B.A.'s grandson, J.M., lived with her. J.M. was a co-defendant in the case.[1]

In September 2015, Atkins, B.A., and J.M. moved to a trailer home in Lamoni. They moved from the trailer home to a house in October 2016. They

---

[1] This appeal does not involve the charges against J.M.

lived there for about two years, then moved to Mount Ayr. When Atkins lived in Lamoni, B.T. and L.S. would visit Atkins's home three to five times a week. S.S. would drop the children off at Atkins's home for babysitting when she worked. Sometimes the children would stay overnight. The children also frequently went to the Atkins's residence directly after school—either being picked up by B.A. and Atkins or dropped off by the school bus.

On November 16, 2017, S.S. found L.S. and her younger son naked and in a sexual position. When S.S. asked what the boys were doing, L.S. said he had learned the behavior from Atkins. L.S. further reported that Atkins made him do similar sexual things to his sister B.T. S.S. asked B.T. if "[Atkins] made her and [L.S.] do stuff together." B.T. turned "very white" and "started shaking and looking at the floor and said that she didn't remember." After reassurance from S.S., B.T. disclosed that Atkins had sexually abused her.

S.S. contacted the Lamoni police department. B.T. was interviewed and a physical exam was performed. The physical exam indicated that an injury had not occurred within the last seventy-two hours.

On January 5, 2018, Atkins was charged with two counts of sexual abuse in the second degree. A jury trial commenced on September 16, 2019. On September 23, the jury found Atkins guilty on both counts. On December 7, 2019, Atkins filed a motion for a new trial. The district court issued an order denying Atkins's motion. A sentencing hearing was held on February 19 and final judgment was entered the next day. Atkins was sentenced to an indeterminate twenty-five year period of incarceration on each count to be served consecutively. The

sentences were subject to a seventy percent mandatory minimum pursuant to Iowa Code section 902.12.[2]

## II.    Analysis

### A.    Sufficiency of the Evidence

Atkins argues there was insufficient evidence to support his convictions. Sufficiency of evidence claims are reviewed for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). A verdict is binding upon this court and will be upheld unless it is not supported by substantial evidence. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). Substantial evidence is evidence that would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* We view all relevant evidence in the light most favorable to the State. *Id.*

Atkins argues B.T.'s testimony was the only evidence offered against him and contends that alleged inconsistencies leave it insufficient to support his convictions. At trial, B.T. testified that Atkins first began abusing her at the trailer home. B.T. was nine years old and in fourth grade at the time. B.T. told the jury that as she went to get a glass of water, she could see that Atkins was "on the couch with no clothes on." She said Atkins told her "to come to him" and "to take off her clothes." She said Atkins closed the curtains and "start[ed] putting his body

---

[2] Additionally, the court imposed a special sentence pursuant to Iowa Code section 903B.1 for the rest of Atkins's life, placed him on the sex offender registry, and required that he successfully complete a sex offender treatment program.

all over [her]." B.T. told the jury Atkins put his penis on or inside her vagina and touched her vagina with his hands.[3]

B.T. also testified about abuse that occurred at the house Atkins moved to after the trailer home. B.T. told the jury Atkins "was doing the same stuff but in different places" around the house. She said Atkins "was making [her] have sex" with her brother, L.S., while he watched. B.T. also described an incident where Atkins pulled her to the laundry room and made her take her clothes off. B.T. said Atkins put her on the washer or dryer and "just put his parts on [her] parts." B.T. said that Atkins told her not to tell "the people" about what he had done to her.

L.S. also testified at trial. L.S. corroborated B.T.'s testimony regarding Atkins making the children perform sex acts on one another. L.S. described an incident where Atkins stood by the door and told him and his sister to take their clothes off and get on top of each other. L.S. specifically described putting his penis into B.T.'s vagina. L.S. also described incidents in which he was sexually abused by J.M.

Atkins points to alleged inconsistencies in B.T.'s testimony which he argues make it unreliable. Specifically, Atkins notes that B.T. testified that the first instance of abuse occurred in the trailer home, where the Atkins lived in 2016, but also that the abuse began when she was in fourth grade, during the 2017–2018 school year at which time Atkins had moved from the trailer home to the house. Atkins further alleges B.T.'s testimony concerning the room in which an incident of

---

[3] B.T. identified these specific "body parts" during her testimony.

abuse at the house occurred was inconsistent with her previous statements offered in deposition. Additionally, Atkins argues B.T.'s description of the alleged abuse in the laundry room lacks specificity, and it could not have occurred because other people were in the house. Finally, Atkins argues B.T.'s testimony is not supported by direct physical evidence.

In support of his position, Atkins cites this court's decision in *State v. Smith*, 508 N.W.2d 101, 103–05 (Iowa Ct. App. 1993), in which the Iowa Court of Appeals found the testimony offered by the alleged victims lacked the probative value necessary to support a guilty verdict. Atkins argues the doctrine articulated in *Smith* is applicable to the testimony of B.T. as it was "inconsistent, self-contradictory, lacking in experiential detail, and at times, bordering on the absurd." *See Smith*, 508 N.W.2d at 105.

We reject Atkins's invitation to adopt the doctrine articulated in *Smith* on the facts of this case.[4] The use of the doctrine relied upon in *Smith* to vacate a conviction "is exceedingly rare." *See State v. Hobbs*, No. 12-0730, 2013 WL 988860, at *3 (Iowa Ct. App. Mar. 13, 2013). It is the jury's role as factfinder to "resolve [evidentiary] conflicts in accordance with its own views as to the credibility of the witnesses." *State v. Allen*, 348 N.W.2d 243, 247 (Iowa 1984). *Smith* relied on a narrow exception to this rule where "[t]he testimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by

---

[4] The State asserts that we should formally overrule *Smith*, arguing its reasoning is founded on a misunderstanding of child-sex-abuse dynamics and its holding erroneously limits the exclusive role of factfinders in making credibility determinations. Because we do not find the doctrine articulated in *Smith* applicable to the testimony in this case, we do not address the issue of *Smith*'s continued viability.

the court." 508 N.W.2d at 103 (quoting *Graham v. Chicago & Nw. Ry. Co.*, 119 N.W. 708, 711 (Iowa 1909)). The inconsistencies raised in this appeal are of the kind commonly found in prosecutions for child sex abuse, and they do not render the substance of the testimony impossible, as was found in *Smith*.

Inconsistencies in B.T.'s testimony regarding the particular time and location of specific instances of abuse over the relevant time period do not preclude a conviction. Second-degree sexual abuse under section 709.3 does not make a particular time period a material element of the offense. Further, "under Iowa law the State does not have to elect or prove a date certain in order to prove sex crimes such as incest or statutory rape since the exact time of the act is not material." *State v. Griffin*, 386 N.W.2d 529, 532 (Iowa Ct. App. 1986) (citing *State v. Rankin*, 181 N.W.2d 169, 171 (Iowa 1970)).

Similarly, the lack of direct physical evidence implicating Atkins does not foreclose a guilty verdict. *See State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) ("The only direct evidence is the complainant's testimony. But under today's law that is sufficient to convict."); *State v. Schurman*, 205 N.W.2d 732, 733–34 (Iowa 1973) (outlining the required standard of proof to sustain a jury verdict on a sufficiency of the evidence claim).

The testimony offered was sufficient to convince a rational jury Atkins committed a sex act on B.T. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("We find that the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt."). Viewing the evidence in the light most favorable to the State, we find the record contains substantial evidence to support the jury's verdict.

### B.    Jury Instruction

Atkins argues the district court erred in giving a noncorroboration jury instruction.  Alleged errors in jury instructions are reviewed for correction of errors of law.  *State v. Donahue*, 957 N.W.2d 1, 6 (Iowa 2021).  "It is error for a court to refuse to give a requested instruction where it 'correctly states the law, has application to the case, and is not stated elsewhere in the instructions.'"  *State v. Zobel*, No. 16-0892, 2017 WL 3077922, at *2 (Iowa Ct. App. July 19, 2017) (quoting *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009)).  "Any error in the instructions given 'does not merit reversal unless it results in prejudice.'"  *Id.* (citation omitted).  "Prejudicial error results when instructions materially misstate the law or have misled the jury."  *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 570 (Iowa 2017).

Instruction No. 24 instructed the jury that "[t]here is no requirement that the testimony of an alleged victim of sexual offenses be corroborated."  Atkins points to Iowa Code section 709.6, which states, "No instruction shall be given in a trial for sexual abuse cautioning the jury to use a different standard relating to a victim's testimony than that of any other witness to that offense or any other offense."  Atkins argues the use of instruction No. 24 creates a different standard for child victims by telling the jury their testimony need not be corroborated.

The issue of noncorroboration jury instructions in sexual abuse cases recently came before this court in *State v. Kraai*, No. 19-1878, 2021 WL 1400366, (Iowa Ct. App. Apr. 14, 2021) (further review granted June 30, 2021).  Similar to the present case, *Kraai* involved an appeal from defendant's conviction for second-degree sexual abuse in which the jury was instructed that "there is no requirement

that the testimony of a complainant of sexual offenses be corroborated." *Kraai*, 2021 WL 1400366, at *1. Previously this court had approved of giving such an instruction in *State v. Barnhardt*, No. 17-0496, 2018 WL 2230938, at *4 (Iowa Ct. App. May 16, 2018). However, in *Kraai* this court, sitting en banc, "disavowed" the holding of *Barnhardt. Kraai,* 2021 WL 1400366, at *6. We found giving a noncorroboration instruction highlights the testimony of an alleged sexual abuse victim and creates a "different" standard for evaluating their testimony than that of other witnesses. *Id.* at *5–6. We held it was error for the jury to be given the noncorroboration instruction. *Id.* at *7. We will remain consistent in our approach and therefore find it was error for the jury to be given the noncorroboration instruction.[5]

However, not every instructional error requires reversal. *See State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1983). A jury instruction submitted in error "does not warrant reversal unless it results in prejudice to the complaining party." *State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017) (citation omitted). To assess prejudice, we ask whether the guilty verdict rendered was "surely unattributable" to the faulty instruction. *State v. Shorter*, 945 N.W.2d 1, 9 (Iowa 2020) (citation omitted). "We consider the jury instructions as a whole" rather than in isolation. *State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018). We may look to the strength of the State's case to decide whether giving an erroneous instruction is harmless. *State v. Gibbs*, 941 N.W.2d 888, 900 (Iowa 2020).

---

[5] Because we did not disapprove of similar instructions in previously decided cases, we understand why the district court rejected Atkins's objection to the noncorroboration instruction.

First, the testimony of an alleged victim of sexual abuse is sufficient to convict a defendant even absent corroboration. *Knox*, 536 N.W.2d at 742. B.T. testified at length and in detail about the abuse Atkins perpetrated. Further, B.T.'s account was corroborated by her brother L.S.'s testimony. The instances of abuse were plausible and consistent with Atkins's known supervision of B.T. B.T.'s testimony demonstrated knowledge and awareness of sexual matters outside that of someone her age.

We find B.T.'s testimony alone provided sufficient evidence for the conviction. Additionally, B.T.'s testimony was sufficiently corroborated so that the jury instruction did not prejudice Atkins to such an extent as to require reversal. *See Kraai*, 2021 WL 1400366, at *7 (finding error harmless because "the State offered evidence to corroborate the child's testimony" including items found in the defendant's home matching the child's description and the child describing "details about sexual matters outside the ken of someone her age"); *Garza v. State*, 231 P.3d 884, 891 (Wyo. 2010) (finding jury noncorroboration instruction harmless error because "the record reveals that the testimony of the victim was corroborated by other evidence"); *Ludy v. State*, 784 N.E.2d 459, 463 (Ind. 2003) (deciding noncorroboration instruction was harmless because "clearly the testimony of the victim was not uncorroborated.").

## C. Prior Bad Acts Evidence

Atkins alleges that the district court abused its discretion in admitting prior bad acts evidence of sexual behavior between B.T. and L.S. Evidentiary rulings are reviewed for an abuse of discretion. *State v. Reyes*, 744 N.W.2d 95, 99 (Iowa

2008). "An abuse of discretion occurs when the trial court exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *Id.*

Iowa Rule of Evidence 5.404(b) limits the admission of evidence of prior bad acts.[6] Courts use a three-step test to determine whether such evidence is admissible. The evidence must be relevant, have "clear proof," and the probative value of such evidence must not be substantially outweighed by the danger of unfair prejudice. *See State v. Putman*, 848 N.W.2d 1, 9 (Iowa 2014). Atkins argues the evidence served no permitted purpose, the clear proof requirement cannot be met through the testimony of B.T. and L.S., and the risk of unfair prejudice outweighed the probative value of the evidence.

As a threshold matter, the clear proof requirement is satisfied by the testimony of B.T. and L.S. *See Reyes*, 744 N.W.2d at 101 ("[D]irect testimony from the victim of a prior alleged assault, as a matter of law, is sufficient 'clear proof' to meet the code requirement.").

As to relevance, evidence of prior bad acts "must be probative of some fact or element in issue other than the defendant's criminal disposition." *State v. Taylor*, 689 N.W.2d 116, 123 (Iowa 2004) (quotation omitted). At trial, Atkins objected to the introduction of testimony evidence related to Atkins instructing B.T.

---

[6] Iowa Rule of Evidence 5.404(b) states:

(1) *Prohibited use.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted uses.* This evidence may be admissible for another purpose such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident.

and L.S. to take their clothes off and perform sex acts on each other, arguing the evidence served no legitimate purpose and was being offered only to suggest his criminal sexual deviancy. The State responded that the evidence was relevant to show motive and intent, to explain the children's disclosure of the abuse, and to show the grooming process the defendant engaged in "sexualizing the behaviors of these children." The district court overruled Atkins's objection and stated,

> In considering this [objection], I'm noting that this is an allegation that is related to the offenses that are charged. The same individuals are involved. It's during the same time frame. Even though it may be prejudicial, it is relevant to this—these incidents, as the court does believe that it does go to show pattern, intent, and motive.

We agree with the district court's reasoning. Iowa Code section 701.11 permits the introduction of any chapter 709 crime perpetrated by the defendant against the same victim "for its bearing on any matter for which the evidence is relevant." Iowa Code § 701.11(1). Additionally, "[e]vidence of prior crimes against the same victim furnishes part of the context of the crime or is necessary to a full presentation of the case." *State v. Cox*, 781 N.W.2d 757, 768 (Iowa 2010). Evidence of sexual abuse involving the same victim is admissible to "demonstrate the nature of the defendant's relationship and feelings toward a specific individual." *Reyes*, 744 N.W.2d at 103; *see also State v. Munz*, 355 N.W.2d 576, 583 (Iowa 1984) (explaining sex-abuse exception to exclusion of prior bad acts evidence where a prior or subsequent "similar" act is admissible "if it is probative on the matter of the defendant's sexual desires.").

Finally, the evidence involving Atkins and L.S. was not unfairly prejudicial to Atkins. Prior acts evidence should only be excluded "if its probative value is *substantially* outweighed by the danger of unfair prejudice to the defendant."

*Taylor*, 689 N.W.2d at 124. "Unfair prejudice arises when the evidence would cause the jury to base its decision on something other than the proven facts and applicable law, such as sympathy for one party or a desire to punish a party." *Id.*

Atkins was charged with two counts of sexual abuse in the second degree. Atkins consented to a joint trial with co-defendant J.M. B.T.'s disclosure of the abuse, her allegations, and evidence related to Atkins's relationship with B.T. and L.S. were necessarily admitted to prove the charges against Atkins. As the district court noted, the evidence at issue was "related to the offenses that are charged" because it involved "[t]he same individuals" and it was "during the same time frame." The evidence "was offered in a direct, concise, and noninflammatory fashion and was similar to the underlying charge." *Reyes*, 744 N.W.2d at 100.

We find the district court did not abuse its discretion in admitting prior bad acts evidence.

### D.    Consecutive Sentences

Lastly, Atkins contends that the district court abused its discretion when it sentenced him to two consecutive twenty-five-year prison terms. Review of a sentence imposed is for correction of errors at law. Iowa R. App. P. 6.907. Sentencing court decisions within the statutory limit are reviewed for an abuse of discretion. *State v. Avalos Valdez*, 934 N.W.2d 585, 588 (Iowa 2019). A sentencing court abuses its discretion only when it "exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* "A district court's 'ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law.'"

*State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016) (quoting *State v. Putman*, 848

N.W.2d 1, 8 (Iowa 2014)).

Atkins argues the district court abused its discretion "by stating twice that

Atkins did not take responsibility for his actions." The district court gave the

following reasoning when sentencing Atkins:

> And in determining what the appropriate sentence is in this case, as in any other case, I want you to know that I have considered a number of factors. Those factors include all of the information contained within your presentence investigation. "All" I believe is—I don't know how many pages this is, but I read all of them and familiarized myself quite well with your history. That includes everything from your criminal history, which you do have some criminal history before these charges came up, your family circumstances.
> I would agree with [defense counsel], it—you haven't had very good family circumstances from the time you were a kid. However, I don't believe that that justifies anything that you're before me today for.
> I've considered the need and potential for rehabilitation.
> I've considered the impact on the victim in this case, or victims, including their mother.
> I've considered the nature and circumstances of the offenses that you've been convicted of; and whether the community needs any protection from any further offenses on your behalf.
> I've considered the fact that you still to this day are not taking any responsibility for your offenses.
> . . . .
> Those sentences shall run consecutive to each other. I'm ordering them to be run consecutive in consideration of the nature and circumstances of this—these offenses, including the age of the child; that they are separate and distinct offenses committed by Mr. Atkins, it wasn't just one offense, there—it occurred multiple times. Also because of the relationship of trust that should have been there between Mr. Atkins and the victim of this offense. If I haven't said it already, but I believe I did, the age of the victim in this case; and the fact that Mr. Atkins continues to fail to take responsibility for his actions.

Atkins argues that by stating he refused to accept responsibility for his

actions, the trial court crossed the line between considering a "defendant's lack of

remorse and penalizing a defendant for refusing to plead guilty and insisting on his right to trial." *See State v. Knight*, 701 N.W.2d 83, 88 (Iowa 2005).

We disagree. A "trial court must carefully avoid any suggestions in its comments at the sentencing stage that it was taking into account the fact defendant had not pleaded guilty but had put the prosecution to its proof." *State v. Nichols*, 247 N.W.2d 249, 256 (Iowa 1976). However, "this prohibition does not preclude a sentencing court from finding a lack of remorse based on facts other than the defendant's failure to plead guilty." *Knight*, 701 N.W.2d at 77. A sentencing court may consider a defendant's lack of remorse as "a defendant's lack of remorse is highly pertinent to evaluating his need for rehabilitation and his likelihood of reoffending." *Id.* at 88.

The court's acknowledgment that Atkins has failed to take responsibility for his actions does not indicate the court was penalizing Atkins for not pleading guilty. The court considered many relevant factors, including the presentencing report (PSI), Atkins's life experiences and history, the nature and circumstances of the offense, the separate and distinct nature of the offenses, the young age of victims, and Atkins's relationship to the victims. A lack of remorse "can be discerned by any admissible statement made by the defendant pre-trial, at trial, or post-trial, or by other competent evidence properly admitted at the sentencing hearing." *Id.* at 87–88 (quotations omitted).

We find no abuse of discretion in the district court's sentencing decision. *See State v. Jacobs*, No. 18-0160, 2019 WL 156638, at *3 (Iowa Ct. App. Jan. 9, 2019) ("[T]he court can consider a defendant's acceptance of responsibility—or lack thereof—in deciding what sentence to impose"); *State v. Denton*, No. 14-0172,

2014 WL 3749417, at *1 (Iowa Ct. App. July 30, 2014) ("The district court's consideration of the defendant's lack of remorse and failure to accept responsibility for her conduct was entirely appropriate.").

## III.  Conclusion

We find the record contains sufficient evidence to support Atkins's convictions, inclusion of the noncorroboration jury instruction does not require reversal, and the district court did not abuse its discretion in admitting prior bad acts evidence or in imposing consecutive sentences.  Accordingly, we affirm Atkins's conviction.

**AFFIRMED.**